**William SPRIGGS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 86–0703–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

May 15, 1987.

John B. Boatwright, III, Richmond, Va., Michael Savage, Gersten, Savage, Kaplowitz & Zukerman, New York City, for plaintiff.

Robert W. Jaspen, Asst. U.S. Atty., U.S. Atty.'s Office, Richmond, Va., Wilbur T. Miller, Office of Sp. Litigation, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

RICHARD L. WILLIAMS, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment. The case presents the legal issue of the proper method for calculating penalties under § 6700 of the Internal Revenue Code, 26 U.S.C. § 6700 (1982), *amended by* 26 U.S.C. § 6700 (Supp. III 1985). Specifically, does § 6700 provide for a penalty of $1,000 *per sale* of an interest in an abusive tax shelter, or is the $1,000 penalty a minimum penalty that applies only when 10% (now 20%) of the income derived from the salesperson's overall sales activity for the year is less than $1,000? For the reasons stated below, the Court rules that the latter is the proper interpretation of the statute.

## STATEMENT OF FACTS

Plaintiff was an accountant who introduced his clients to tax-advantaged investments in 1982 and 1983. During these years he made 21 sales of various partnership interests. He concedes for the purposes of this action that the conduct subjects him to a penalty under § 6700.

In 1983, plaintiff was paid $5,880 in commissions from 8 sales of partnership interests made in 1982. The Internal Revenue Service ("the Service") asserted a penalty against him under § 6700 for 1982 in the amount of $5,880.

In 1984, plaintiff was paid $9,750 in commissions from 13 sales of partnership interests made in 1983. The Service asserted a penalty against him under § 6700 for 1983 in the amount of $9,750.

The Service asserted the 1982 and 1983 penalties in the amounts indicated because it is the Service's position that, if $1,000 exceeds 10% of the income derived from *each* pre–1984 *sale*, the amount of the § 6700 penalty is $1,000 per sale. Since plaintiff made 21 separate sales, the Service maintains that he is subject to a penalty of $21,000. However, because he derived only $15,630 in income from all sales ($5,880 + $9,750), the penalty was administratively limited to the amount of income that he actually derived in order to facilitate the Service's collection efforts.

### STATEMENT OF THE CASE

Plaintiff seeks a redetermination of the amount of penalty to be assessed against him by the Service, pursuant to § 6700 of the Internal Revenue Code of 1954, 26 U.S.C. § 6700 (1982), *amended by* 26 U.S.C. § 6700 (Supp. III 1985). Pursuant to 26 U.S.C. § 6703(c), plaintiff paid 15% of these assessments, or $882 for 1982 and $1,462.50 for 1983; filed claims for an abatement of the penalties (which would result in a refund for 1983) on the ground that the maximum penalty for each year is $1,000; and brought separate actions for each year, which the Court consolidated, within 30 days after those claims were denied.

Plaintiff also seeks attorneys' fees pursuant 26 U.S.C. § 7430.

### SECTION 6700(a)

Section 6700(a) of the Internal Revenue Code, as originally enacted [1] and as pertinent here, provided in full as follows:

1. The Tax Reform Act of 1984, Pub.L. No. 98–369, § 143(a), 98 Stat. 494, 682, raised the penalty from 10% to 20% of income derived "from

### SEC. 6700 PROMOTING ABUSIVE TAX SHELTERS, ETC.

(a) Imposition of Penalty.—Any person who—

(1)(A) organizes (or assists in the organization of)

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of $1,000 or 10 percent of the gross income derived or to be derived by such person from such activity.

### DISCUSSION

The United States' position is simple. The Service argues that the statutory language is clear and unambiguous, and that the persistent use of singular nouns—organization, sale, penalty, and activity—throughout subsection (a) clearly evidences a Congressional intent to impose a separate penalty of $1,000 or 10 percent of derived income for each organization of an abusive tax shelter or each sale of an interest therein. The Service arrives at its interpretation of the statute by defining the term "activity" to mean each "sale." Thus, un-

the activity." *See* 26 U.S.C. § 6700 (1982 & Supp. III 1985).

der the Service's interpretation, unless 10% of the income derived from each sale exceeds $1,000, the $1,000 penalty applies to each sale.

■ The only published decision on point, *Waltman v. United States*, 618 F.Supp. 718 (M.D.Fla.1985), supports the Service's position. The very short opinion does not provide any reasoned analysis, however, stating only that "[t]he prohibited 'activity' is the sale of an 'interest' in a tax shelter," and that the plaintiff could be assessed "the greater of $1,000 or 10% of gross income derived from each 'sale' of the prohibited interests." *Id.* at 720. Believing the *Waltman* case to have been wrongly decided, this Court declines to follow it.

The language of § 6700(a) clearly suggests that the $1,000 penalty would apply if it exceeded 10% of the income derived from something other than *each* sale of an interest in an abusive tax shelter. Had Congress intended the penalty to apply to each sale, it would have so provided—simply by using the words "such organization or sale" instead of "such activity" at the end of subsection (a). That phrase—"such organization or sale"—had already been used, in the first line in subsection (a)(2), when Congress wanted to indicate that only those individual sales with respect to which a proscribed statement is made or furnished are covered by § 6700. Use of that language demonstrates that Congress knew how to refer to each sale if that is what it wanted to do. When Congress used the word "activity," therefore, it meant something different: not each sale but rather the salesperson's overall activity of promoting abusive tax shelters.[2]

Moreover, when Congress has intended to levy a penalty on each act, it has said so specifically. For example, the penalty for failing to file an information return or registration statement applies "in the case of each failure." 26 U.S.C. § 6652(a). The penalty for failing to furnish a statement to an employee, 26 U.S.C. § 6674, or to supply a taxpayer identifying number, 26 U.S.C. § 6676, or to supply information on a place of residence, 26 U.S.C. § 6687, applies to "each such failure." A person who assists someone in understating his tax liability on any document pays a penalty "with respect to each such document." 26 U.S.C. § 6701(a). In the area of tax shelters, a person who fails to maintain a list of persons who have invested in potentially abusive tax shelters pays a penalty "for each person with respect to whom there is such a failure." 26 U.S.C. § 6708. *See also* 26 U.S.C. §§ 6705, 6706, 6707, and 6708.[3] In view of its designation of specific acts in other penalty provisions of the Code, and of its previous use of the words "such organization or sale" in subsection (a)(2) of § 6700, Congress would have used the words "such organization or sale" at the end of § 6700(a) had it intended the $1,000 penalty to be applied with respect to each sale.

Contrary to the Service's suggestion that nothing outside the language of the statute can provide significant guidance on the proper interpretation of § 6700, the Court finds the legislative history of the Tax Reform Act of 1984, Pub.L. No. 98–369, § 143(a), 98 Stat. 494, 682, which raised the penalty from 10% to 20% of income derived "from the activity," helpful in ascertaining Congressional intent. The House Committee Report on the 1984 Act states:

**2.** The United States argues that this interpretation unacceptably leaves open the question of how the penalties are to be assessed, *e.g.*, every year, every tax shelter, over the salesperson's lifetime, etc., and that a yearly assessment is illogical since the § 6700 penalty does not arise from the obligation to file a tax return. The Court, however, concludes that an annual-basis determination of § 6700 penalties is proper. 26 U.S.C. § 6671 provides that the penalties and liabilities provided by subchapter 68B, which includes § 6700, are assessed in the same manner as taxes, which are assessed on an annual basis. *Cf.* 26 U.S.C. § 6072.

**3.** Two sections numbered § 6708 were enacted by the Tax Reform Act of 1984, Pub.L. No. 98–369, § 612(d)(1) and § 142(b), 98 Stat. 494, 912 and 682. The first provides for failure to maintain lists of investors in potentially abusive tax shelters; the second provides for penalties with respect to mortgage credit certificates.

The attention of the Committee has been drawn to evidence that the 10-percent penalty enacted in TEFRA is inadequate in amount since promoters of tax shelters operate on a large margin.

The bill increases the penalty for promoting abusive tax shelters to the greater of 20 percent of the gross income derived, or to be derived, from the activity, or $1,000. The committee did not increase the $1,000 penalty because, as originally enacted, the $1,000 *was intended to be a minimum penalty on small promoters who derive little income from the deals they promote.*

H.R.Rep. No. 432, 98th Cong., 2d Sess. 1, 1357–58, *reprinted in* 1984 U.S.Code Cong. & Ad.News 697, 1009 (emphasis added). The Committee Report demonstrates that Congress understood that some promoters (like the plaintiff) would earn only a few thousand dollars from all their promotion activities and, under the 10% provision, would incur a penalty of only a few hundred dollars. These "small promoters" would therefore be penalized instead by the $1,000 minimum penalty.[4]

Curiously, the Service argues that its interpretation should be upheld because otherwise in all cases in which a promoter makes over $10,000, the penalty will be 10% of gross income—a cost which, the Service says, the promoter would simply recoup by charging more for his product. But Congress realized this problem in 1984. That is precisely why it raised the penalty to 20% of income—because "promoters of

tax shelters operate on a large margin" (and can therefore pass on the cost of the penalty). Indeed, had Congress understood that the $1,000 penalty resolves the "large margin" problem, as the Service contends, there would have been no need to raise the penalty to 20%.

Finally, the amount of penalty a promoter of abusive tax shelters pays should not depend on how he sells those shelters but on whether he sells them. The proper interpretation of the statute applies the penalties evenly to all promoters. Under the Service's interpretation, different salespeople pay different penalties depending on what they sell. For example, assume two salespeople each have 10 partnership units to sell and that each earns $3,000 for each unit sold. Salesperson # 1 sells 10 units to 10 different people (10 sales), and earns $30,000. Under the Service's interpretation, that salesperson's § 6700 penalty (for pre–1984 sales) is $10,000 (10 sales times $1,000 per sale). Salesperson # 2 sells all 10 units to one person (one sale), and also earns $30,000. (Since the Service considers the sale of a ½ unit to one person as one sale, presumably it would consider the sale of 10 units to one person as one sale.) Under the Service's interpretation, that salesperson's pre–1984 § 6700 penalty is $3,000 (10% of $30,000). Under the plaintiff's interpretation, which is the proper one, both salespeople pay the same penalty—10% of the income they derive from the activity, or $3,000 ($6,000 after July 18, 1984).[5]

4. Under the Service's interpretation of the statute, plaintiff, who earned a fee of $800 on each sale, would still be considered a "small promoter," to whom Congress particularly aimed the $1,000 penalty since they "derive little income from the deals they promote," even if he had earned $800,000 as long as he earned that amount by making 1,000 separate sales. Eight hundred thousand dollars is hardly "little income;" that Congress would consider a salesperson making $800,000 a year in commissions a "small promoter" is unlikely.

5. While the Service contends that salesperson # 1 *should* pay a higher penalty because he has "victimized" ten independent taxpayers as opposed to one, it advances no authority for its "per victim" theory. In fact, the legislative history of the section indicates that Congress' main

concern about abusive tax shelters was that the "widespread marketing and use of tax shelters undermines public confidence in the fairness of the tax system and in the effectiveness of existing enforcement provisions. These tax schemes place a disproportionate burden on the Internal Revenue Service resources." H.R.Rep. No. 404, 97th Cong., 2d Sess. 1, 266, *reprinted in* 1982 U.S.Code Cong. & Ad.News 781, 1014. That § 6700 might aid individual taxpayers in fraud actions against promoters of abusive tax shelters was merely a bonus. Furthermore, arguments concerning the sufficiency of the § 6700 penalties to adequately deter promoters of abusive tax shelters should be addressed to Congress. Regardless of whether or not the penalties are high enough, the scheme Congress has devised for assessing them applies to small pro-

In summary, the language of § 6700 clearly indicates that the $1,000 penalty is a minimum penalty that applies only when 10% (20% after July 18, 1984) of the income derived from the salesperson's overall sales activity in promoting abusive tax shelters for the year is less than $1,000. Legislative history and the existence of other penalty provisions in the Code that specifically penalize separate acts provide further evidence that this interpretation is correct. Indeed, it is this interpretation that applies the § 6700 penalties evenly to all promoters of abusive tax shelters.

For these reasons, the Court DENIES defendant's motion for summary judgment and GRANTS plaintiff's motion for summary judgment.

## ATTORNEYS' FEES

■ Plaintiff has also moved for attorneys' fees, pursuant to 26 U.S.C. § 7430(a) (1982). Under § 7430(a), a "prevailing party" may recover these fees. A prevailing party is one who substantially prevails with respect to either the amount in controversy or the most significant issue(s) presented, and who "establishes that the position of the United States in the civil proceeding was unreasonable." 26 U.S.C. § 7430(c)(2)(A). As plaintiff has prevailed with respect to the only issue presented here, the remaining question for attorneys' fees is whether or not the Service's position was unreasonable.

Plaintiff's action presented an issue of first impression in this Circuit. The only published decision on point, from the middle district of Florida, adopted the Service's method of calculating penalties under § 6700. While the Service's position was incorrect, the Court cannot say that it was unreasonable. Accordingly, the Court DENIES plaintiff's motion for attorneys' fees.

An appropriate order shall issue.

moters such as plaintiff in the same way it applies to big-time promoters.