**In re Mack J. BOWEN and Dorothy N. Bowen, Debtors.**

**Mack J. BOWEN and Dorothy N. Bowen, Plaintiffs,**

v.

**UNITED STATES INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 86B–03695.**
**Civ. No. 87PB–0236.**

United States Bankruptcy Court, D. Utah, C.D.

March 28, 1988.

---

Robert D. Rose, Salt Lake City, Utah, for Mack J. and Dorothy M. Bowen, plaintiffs.

Brent D. Ward, U.S. Atty., Glen R. Dawson, Asst. U.S. Atty., Salt Lake City, Utah, and Kirk C. Lusty, Trial Atty., U.S. Dept. of Justice, Washington, D.C., with him on the brief, for U.S.I.R.S., defendant.

## MEMORANDUM OPINION

JUDITH A. BOULDEN, Bankruptcy Judge.

### PROCEDURAL BACKGROUND

A petition for relief under Chapter 11 of the Bankruptcy Code was filed by Mack J. and Dorothy Bowen (Bowens) on the 29th day of August, 1986. The United States Internal Revenue Service (I.R.S.) filed an amended proof of claim in the case in the amount of $78,225.59.[1] The Bowens filed this adversary proceeding to determine the extent of the I.R.S.'s lien on the Bowens' property, to object to the claim of the I.R.S., and to request an injunction against the I.R.S.'s filing a "protective claim".[2] The I.R.S. asserts that on July 28, 1986, an unsecured penalty was assessed by it against the Bowens in the sum of $29,426.00 as a result of Mack Bowen's efforts in selling allegedly abusive tax shelter interests in Jarelco American Energy and/or Balanced Financial Management. Mack Bowen admits that he engaged in the transactions of selling the shelters in the tax years 1982, 1983 and 1984, and that his income from such sales totaled $2,490.00 for 1982, $13,093.00 for 1983, and $16,878.00 for 1984. Bowen does not know how many individual "sales" he finalized during this three-year period, nor does he admit that the tax shelters were abusive.

---

1. On April 15, 1987, the I.R.S. filed a second amended claim in the face amount of $78,225.59 with $13,506.38 as secured, $29,547.88 as general unsecured (penalty), and $35,171.33 as priority claims. $30,536.00 of the priority claim was designated as estimated liability for 1984 1040 taxes.

2. The parties consent to entry of a final order in this proceeding pursuant to 28 U.S.C. § 157.

On the 6th day of January, 1988, the Bowens filed a Motion For Summary Judgment on the legal question of the proper statutory construction of the abusive tax shelter penalty provisions of Internal Revenue Code (I.R.C.) Section 6700 (1982), *amended by* I.R.C. Section 6700 (Supp. III 1985) which was used to compute the amount of the penalty assessed by the I.R.S. Because there are issues of fact that are in dispute, this court, by stipulation of the parties, considered the motion a request for declaratory relief. The matter was submitted to the court without oral argument and taken under advisement.[3]

### ISSUE

The issue before the court is the proper method for calculating abusive tax shelter penalties under I.R.C. Section 6700. This section of the statute, entitled "Promoting Abusive Tax Shelters, Etc.", as originally enacted, provided:

**(a) Imposition of Penalty**

Any person who—

(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of $1,000 or 10 percent of the gross income derived or to be derived by such person from such activity.[4]

The I.R.S. takes the position that the penalties assessed under section 6700 should be calculated on a transactional basis. Simply put, there should be a minimum $1,000 penalty assessed for each "activity", i.e., a $1,000 penalty for each sale of a prohibited tax shelter. The I.R.S. asserts that each activity equals each sale. Under this interpretation, the penalty based on the percentage of gross income would occur only where the gross income exceeds $10,000 for each sale ($5,000 after July 18, 1984). In addition, the I.R.S. argues that the assessment of the penalty should be on a one-time basis, rather than annually.

The Bowens dispute the I.R.S.'s methodology. They argue that section 6700 calls for a minimum penalty equal to the greater of $1,000 per year or 10% (20% after July 18, 1984) of the total amount of income earned from the sale of such shelters in any given year. The Bowens also argue that the assessment of the penalty should be on an annual tax year basis.

This court recognizes that the penalty under section 6700 is an important element of the I.R.S.'s efforts to eliminate abusive tax shelters. However, the assessment of the penalty must be done in a fair and

---

**3.** While under advisement, there has been some confusion as to the status of this matter. On February 3, 1988, the Bowens filed with the court a Notice of Withdrawal of Motion for Summary Judgment Without Prejudice. The I.R.S. then filed a Response to Notice of Withdrawal of Motion for Summary Judgment Without Prejudice on February 12, 1988. Finally, the Bowens filed a Notice of Reinstatement of Motion for Summary Judgment and Request for Ruling on February 12, 1988. The confusing nature of these pleadings aside, the court proceeds as set forth above.

**4.** The Tax Reform Act of 1984, Pub.L. No. 98–369, § 143(a), 98 Stat. 494, 682 raised the penalty from 10% to 20% of income derived "from the activity." This amendment became effective July 18, 1984.

equitable manner. The court concludes that a transactional, "per sale" assessment method is not supported by a reasoned analysis of the case law and legislative history, and that such an interpretation would lead to inequity in its application. Furthermore, the assessment of the penalty should be made on a one-time basis, rather than annually.

## ANALYSIS

### A. Calculation of Penalty on Non–Transactional Basis

Prior to 1982, there were no penalty provisions specifically directed at promoters of abusive tax shelters. In order to remedy this problem, section 6700 was added to the I.R.S. Code by the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L.No. 97–248, 97th Cong., 2d Sess. and became effective September 4, 1982. Although the legislative history to section 6700 is relatively limited, it does shed some light on the issue before the court. The Senate Finance Committee Report indicates the new penalties were enacted to attack the source of abusive tax shelters by penalizing the promoters of the tax shelters.[5] In 1984, Congress concluded that the existing I.R.C. Section 6700 penalty did not effectively deter abusive tax shelter promoters, and raised the penalty from 10% to 20% of income derived from the activity.[6]

The center of the dispute between the I.R.S. and the Bowens rests on the interpretation of the phrase "such activity". Neither "activity", nor "such activity" is used anywhere else in the statute. Nothing in section 6700 indicates whether the activity referred to is (1) the act of "Promoting Abusive Tax Shelters" (the title of section 6700), (2) the act of organizing or assisting to organize the tax shelter (section 6700(a)(1)(A)), (3) the act of participation in the sale of a tax shelter interest (section 6700(a)(1)(B), (4) the act of making or furnishing the prohibited statement (section 6700(a)(2)), or (5) all of the above. Additionally, nothing in the statutory language gives a clear indication of the limits of the referenced "activity". It is also unclear whether the activity should be

---

**5.** The Senate Report states in part:

> As of September 30, 1981, 248,828 returns with tax shelter issues were in the examination process, according to the 1981 Annual Report of the Commissioner of Internal Revenue. This represents an increase of 74,584 returns of this type over the prior fiscal year. The widespread marketing and use of tax shelters undermines public confidence in the fairness of the tax system and in the effectiveness of existing enforcement provisions. These tax schemes place a disproportionate burden on the Internal Revenue Service resources.
>
> The committee believes that the penalty provisions of present law are ineffective to deal with the growing phenomenon of abusive tax shelters. Abusive tax shelters must be attacked at their source: the organizer and salesman. The committee recognizes that the Securities Exchange Commission has powers that may be directed toward some tax shelter promoters but believes Internal Revenue Service enforcement in this area will materially contribute to a solution of this problem in a number of ways. For example, the Internal Revenue Service can be expected to approach the problem with vigor since prevention of abusive shelter promotions will require less manpower than enforcement actions against numerous investor-taxpayers. In addition, if the Internal Revenue Service establishes fraud by a promoter, the investors may be materially aided in their efforts to seek rescission of the contracts under which they invested. Finally, the promoter penalty is particularly equitable because the promoter, professional advisor or salesman of a tax shelter is generally more culpable than the purchaser who may have relied on their representatives as to the tax consequences of the investment.

S.Rep. No. 97–494, 97th Cong., 2d Sess. at 266, *reprinted in* 1982 U.S.Code Cong. & Admin. News 781, 1014.

**6.** The House Committee Report related to the Deficit Reduction Act of 1984 states in part:

> The attention of the Committee has been drawn to evidence that the 10–percent penalty enacted in TEFRA is inadequate in amount since promoters of tax shelters operate on a large margin.
>
> The bill increases the penalty for promoting abusive tax shelters to the greater of 20 percent of the gross income derived, or to be derived, from the activity, or $1,000. The committee did not increase the $1,000 penalty because, as originally enacted, the $1,000 was intended to be a minimum penalty on small promoters who derive little income from the deals they promote.

H.R.Rep. No. 98–432, 98th Cong., 2d Sess. 1, 1357–58, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1009.

viewed as a discreet act or series of acts over time.

There is divergent case law on the meaning of "such activity" in the context of the interpretation of section 6700. Of the reported cases, this court finds the analysis in *Spriggs v. United States*, 660 F.Supp. 789 (E.D.Va.1987), *appeal pending* No. 87–1651 (4th Cir.1987), to be the most helpful and well reasoned. In *Spriggs*, the I.R.S. had assessed a penalty of $21,000 for 21 individual sales (21 sales × $1,000) of abusive tax shelters in 1982 and 1983. However, the penalty sought had been reduced to the total amount of income received by Spriggs from all the sales ($15,630). Spriggs sought a redetermination of the penalty, claiming that the maximum penalty for any one year should have been $1,000 because his income for that year from all sales did not exceed $10,000 (now $5,000).

The court in *Spriggs* specifically rejected the I.R.S.'s $1,000 "per sale" approach and held that, "the language of § 6700 clearly indicates that the $1,000 penalty is a minimum penalty that applies only when 10% (20% after July 18, 1984) of the income derived from the salesperson's *overall* sales activity in promoting abusive tax shelters *for the year* is less than $1,000." *Id.* at 793 (emphasis added).[7] The court primarily reached its conclusion based on an examination of legislative history that indicates the need for an even application of the penalties, and a determination that if Congress had intended the penalty to apply to each "sale" separately, it would have

more specifically described the application of the penalty as it had done in other penalty provisions in the I.R.S. Code.[8] The court in *Spriggs* concluded that if Congress had intended the penalty to be applied to each sale, it would have used the phrase "such organization or sale", as used in section 6700(a)(2) instead of the phrase "such activity" as used in section 6700(a)(1).

The I.R.S. cites *Waltman v. United States*, 618 F.Supp. 718 (M.D.Fla.1985) and *Johnson v. United States*, 677 F.Supp. 529 (E.D.Mich.1988) as direct support for its method of calculation.[9] Both courts determined that the penalty should be imposed on a transactional basis. The *Waltman* decision does not adequately analyze why the penalty should be imposed on a transactional basis and is, therefore, of little assistance in this court's resolution of the matter.

In *Johnson,* the promoter sold four tax shelter interests to four separate investors. The I.R.S. determined that the tax shelters were abusive and assessed a $4,000 penalty (4 sales × $1,000). The promoter objected to the I.R.S. assessment and requested a determination by the district court as to the proper amount of the penalty. The court upheld the I.R.S.'s interpretation of the statute and stated that any reasonable I.R.S. interpretation of penalty provisions should be given deference because the administration of the tax laws has been delegated to the I.R.S. *Johnson,* 677 F.Supp at 531 (citing *Commissioner v. Portland*

7. See also the decision in *Ostrow v. United States,* No. 85–470–CIV–T–17 (M.D.Fla.1985) (Available on WESTLAW, 1985 WL 5961) where the court also held that a per transaction penalty assessment was inappropriate, and finding no legal authority to support the I.R.S.'s broad reading of § 6700.

8. For other tax provisions where the penalty provisions are more specific, see for example I.R.C. § 6652 (penalty for failure to file an information return or registration statement); I.R.C. § 6674 (penalty for failing to furnish a statement to an employee); I.R.C. § 6708 (penalty for failure to maintain a list of persons who have invested in potentially abusive tax shelters); and I.R.C. §§ 6676, 6687, 6701, 6705, 6706, and 6707.

9. In addition to *Waltman* and *Johnson,* two other district court cases have been provided by the I.R.S. as giving support to the I.R.S.'s method of calculating the penalty. Both cases, *McGrew v. United States,* 85–2 U.S.T.C. (C.C.H.) ¶ 9671 (M.D.Fla. July 19, 1985) [Available on WESTLAW, 1985 WL 6374] and *Bean v. United States,* 618 F.Supp. 652 (N.D.Ga.1985) involve jeopardy assessments levied pursuant to I.R.C. § 6862. This court finds that neither *Bean* nor *McGrew* is controlling or, considering their different procedural context, particularly helpful to the I.R.S.'s argument for transactional application of § 6700 penalties.

*Cement Co. of Utah*, 450 U.S. 156, 101 S.Ct. 1037, 67 L.Ed.2d 140 (1981)). In giving such deference to the I.R.S.'s interpretation, the *Johnson* court did not reach any conclusion as to whether the I.R.S.'s interpretation was actually correct, nor did it discuss a taxpayer's ability to overcome this deference in certain circumstances. This court finds that the I.R.S.'s interpretation is unreasonable because of the possible inequitable application of the penalty and therefore will not give such deference to the I.R.S.'s position. Furthermore, the *Johnson* court seems to put great weight on the fact that the *Waltman* court had upheld the I.R.S.'s "per transaction" method. *Id.* at 531. This court believes that because the court in *Waltman* did not sufficiently analyze the calculation of the penalty, the *Johnson* court's reliance upon *Waltman* is misplaced.

A non-transactional interpretation of the statute would eliminate the potential inequitable application of the penalty provisions which could likely flow from the I.R.S.'s position. It must be remembered that the scope of the language in section 6700(a) is very broad. The penalty applies not only to those who sell abusive tax shelters, but also to anyone who "organizes" or "assists" in the organization of those shelters. An organizer may likely retain several individuals to sell a tax shelter in units which are easy to market. A penalty assessed on a transactional basis would clearly discriminate against those sellers because their penalty would be assessed on every individual unit sale, while the entity who organizes (or assists) in the creation of the shelter is only subject to the penalty for the overall shelter involved. The minimum penalty of $1,000 may thus be assessed more often for salespersons than organizers even though the income generated may be the same. This inequitable result would be mandated under a transactional approach, because while subsection 6700(a)(1)(B) speaks in terms of selling an "interest", subsection 6700(a)(1)(A) refers to organizing an "entity", "plan" or "arrangement". There is no apparent reason why those who sell should be punished more severely than those who organize.

This appears to the court to be strong evidence that the I.R.S.'s method of calculating section 6700 penalties was not the intent of Congress. Congress intended this penalty to discourage abusive tax shelters, but inconsistent application between organizers and sellers of abusive tax shelters will not aid in that goal. It appears to this court that the penalties under section 6700 should be designed to equally discourage the organization of abusive tax shelters and the sale of the shelters. It is this court's opinion that a non-transactional approach better reflects the purposes underlying the statute and congressional intent.

Counsel for the parties have not called to this court's attention any other applicable case law, nor has any been found by the court. A review of tax-related treatises indicates that a transactional penalty assessment is incorrect. *See* Silverman, *Life During Wartime: The Civil Problems of the Tax Shelter Promoter*, 44 Inst. on Fed. Tax'n § 7.02[4] (1986) and 1 R. Fink, TAX FRAUD § 4.01[7][b] (1987) (citing *Spriggs* with approval). Based on this court's review of the I.R.S. Code, the legislative history, the relevant case law and other authorities, the court concludes that the phrase "such activity" as used in I.R.C. Section 6700 does not refer to *each* sale, but should refer to the general activity of the promoter. Any penalty calculation, therefore, should not be based on the individual number of sales or discrete activities, but on the general activity that transpires and the gross income actually generated by that activity.

B. Assessment of Penalty on a One–Time Basis

The assessment of a penalty under section 6700 is governed by I.R.C. Section 6671. Section 6671, entitled "Rules for Application of Assessable Penalties", reads, in pertinent part:

(a) *Penalty assessed as Tax.*—The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes. Except as otherwise pro-

vided, any reference in this title to "tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter.

The Bowens argue that the penalty assessment should be made annually rather than on a one-time basis, and suggest that this court follow the analysis of the *Spriggs* court. Focusing on the language in section 6671(a) that penalties "shall be assessed ... in the same manner as taxes", the *Spriggs* court concluded that an "annual-basis determination of [section] 6700 penalties is proper" because taxes generally "are assessed on an annual basis." *Spriggs*, 660 F.Supp. at 791 n. 2. This brief conclusory statement was the extent of the court's analysis underlying its decision to impose an annual determination of penalties upon the statute.

The I.R.S. argues that the *Spriggs* interpretation of section 6671(a) is "fundamentally unsound" because that section, instead of referring to any particular period covered by the assessment, actually "is directed to the technique of assessment and the legal effect of such an assessment." I.R.S. memorandum at p. 12. The I.R.S. further attacks the assumption in *Spriggs* that the time period involved, if one is found implicit in section 6671(a), must be an annual one. In support of this argument, the I.R.S. notes that many assessable penalties addressed by section 6671(a) are not assessed on an annual basis. However, all of the sections cited for that proposition involve transactional penalties assessed on a per violative act.[10]

After considering the merits of the parties arguments, as well as searching for expressions of Congressional intent[11], it is this court's determination that section 6671(a) does not impute any particular assessment period to section 6700 penalties. The penalties provided for by section 6700 are for actions that do not relate to any specific tax. Where there is no assessment period made applicable to the penalty through the underlying tax, the penalty should not be arbitrarily tied to some specific time period, i.e., taxable year. It makes the most sense to this court that the I.R.S.'s assessment should be based on all tax shelter income actually received by the Bowens' up to the time of the assessment plus any unrealized amounts which they may reasonably expect to receive in the future from those shelters.[12]

## CONCLUSION

Utilizing the method of calculating the penalty as outlined by this court achieves all of the goals set out in the legislative history to I.R.C. Section 6700. By calculating the penalty on a non-transactional basis, both organizers and salespersons are subject to the penalty in the same way. Assessing the penalty on all tax shelter income actually received or reasonably expected to be received at the time of assessment promotes ease of computation and

---

10. *See e.g.* §§ 6674, 6676, 6687, 6701, 6708. Because this court has determined that § 6700 does not impose a penalty per transaction, the cited sections of the Code are easily distinguished. It is also interesting to note that while § 6708 imposes a $50 transactional penalty for each person not properly maintained on a list of investors in potentially abusive tax shelters, the section also recognizes a calendar year maximum for the penalty.

11. The legislative history to § 6671 is of no great assistance in determining what period of time should be encompassed by the § 6700 penalty assessment. Both the House and Senate Reports state that "[t]his section contains no material changes from existing law." H.R.Rep. No. 1337, 83rd Cong., 2d Sess. (1954) *reprinted in* 1954 U.S.Code Cong. & Admin.News 4017, 4568; S.Rep. No. 1622, 83rd Cong., 2d Sess. (1954) *reprinted in* 1954 U.S.Code Cong. & Admin.News 4621, 5245.

12. Regarding when the assessment may take place, see 14 MERTENS LAW OF FEDERAL INCOME TAX, § 55.56 (1984) (the penalty is immediately assessable upon a violations discovery); 1 R. Fink, TAX FRAUD, § 3.01[3] (1987). As to including potential income in the assessment, § 6700(a) specifically states that the penalty is to be based upon gross income "derived or to be derived" from the tax shelter activities. *See also* S.Rep. No. 97–494, 97th Cong., 2nd Sess. at 267, *reprinted in* 1982 U.S. Code Cong. & Admin.News 781, 1015 ("In determining the penalty with respect to the gross income yet to be derived from an activity the Secretary may look only to unrealized amounts which the promoter or other person may reasonably expect to realize.")

does not require a warped interpretation of the statute.

IT IS SO ORDERED.