Gerald M. POPKIN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1:86–CV–2241–JOF.

United States District Court, N.D. Georgia.

April 21, 1988.

William E. Frantz, Frantz & Sanders, Atlanta, Ga., for plaintiff.

Sharon D. Stokes, Office of U.S. Atty., Atlanta, Ga., Noreen C. Stehlik, U.S. Dept. of Justice, Tax Div., Sp. Litigation Office, Washington, D.C., for defendant.

## ORDER

FORRESTER, District Judge.

This suit for refund of income tax penalties is before the court on the plaintiff's motion for partial judgment on the pleadings and on the defendant's motion for partial summary judgment. The following facts are not in dispute. The Internal Revenue Service determined in 1986 that the

plaintiff had participated in fifty-five sales of the O.E.C. Energy Corporation tax shelter in 1982 and 1983, in violation of 26 U.S.C. § 6700. The IRS calculated the plaintiff's penalty by assessing $1,000 for every violation, a total of $55,000. The penalty was then administratively abated to $48,249, which the Internal Revenue Service determined was the total amount received in commissions by the plaintiff for the fifty-five sales. The plaintiff paid fifteen percent of the assessment, filed a claim for refund of that amount, and filed this suit for refund after six months had expired without action by the Internal Revenue Service. The plaintiff denies any violation of 26 U.S.C. § 6700. The issue presented by these motions is whether the IRS correctly calculated the plaintiff's penalty by assessing $1,000 for each of the fifty-five sales. As the following discussion will show, the statutory language and legislative history are not particularly clear and the few cases on the issue reach differing results. Having carefully weighed the parties' arguments, the court will defer to the interpretation of the IRS and, like the majority of the courts which have addressed this issue, will uphold the "per sale" method of calculation.

The relevant code section, 26 U.S.C. § 6700(a), provides as follows:

Imposition of penalty.—Any person who —(1)(A) organizes (or assists in the organization of)—

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or

participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter, shall pay penalty equal to the greater of $1,000 or 10 percent of the gross income derived or to be derived by such person from such activity.[1]

The plaintiff interprets the final portion of the statute to make the $1,000 penalty a minimum penalty to be assessed only when ten percent of the gross income derived by a taxpayer from abusive tax shelter sales is less than $1,000 *in a taxable year*. The defendant, on the other hand, contends that the $1,000 penalty applies to each violation if the gross income derived *from the violation* is less than $10,000.

The court is aware of six cases addressing the issue of the proper interpretation of § 6700. Four of the six support the government's position and two support the plaintiff's. In *McGrew v. United States*, No. 85–0513–CIV–ORL (M.D.Fla. July 31, 1985), the court concluded that the term "activity" refers to each individual sale, where a false or fraudulent statement was made in connection with that sale. In *Bean v. United States*, 618 F.Supp. 652, 659 (N.D.Ga.1985), Judge Evans of this district noted that the amount assessed by the government should be presumed appropriate and followed *McGrew* in holding that the "activity" refers to each individual sale. In *Waltman v. United States*, 618 F.Supp. 718 (M.D.Fla.1985), the court concluded that the plain language of the statute equates "activity" with the sale of an "interest" in a tax shelter rather than the cumulative tax shelter activities. Most recently, in *Johnson v. United States*, 677 F.Supp. 529, 88–1 USTC ¶ 9149 (E.D.Mich. 1988), the court concluded that the government's interpretation of the statute was reasonable and therefore entitled to deference. On the other side of the debate, in *Ostrow v. United States*, No. 85–470–CIV–T–17 (M.D.Fla.1985) [available on WEST-

---

1. Effective July 18, 1984, the Tax Reform Act of 1984, Pub.L. 98–369, § 143(a), 98 Stat. 494, 682, raised the percentage penalty from ten percent to twenty percent of the gross income derived.

LAW, 1985 WL5961], the court found no legal authority supporting the government's broad reading of § 6700. Finally, in *Spriggs v. United States*, 660 F.Supp. 789 (E.D.Va.1987), the court declined to defer to the government's interpretation because it found that interpretation contrary to the statutory language and to congressional intent.

The starting point for this court's analysis of the interpretational issue is the deference due to be given to the IRS's interpretation. As the Supreme Court recently noted, federal courts "accord substantial deference" to an agency's interpretation of a statute "whenever its interpretation provides a reasonable construction of the statutory language and is consistent with legislative intent." *Securities Industry Association v. Board of Governors*, 468 U.S. 207, 217, 104 S.Ct. 3003, 3009, 82 L.Ed.2d 158 (1984). The principle of deference applies in full force to IRS interpretations of the tax laws because "Congress has delegated to the Secretary of the Treasury, not to this Court, the task 'of administering the tax laws of the Nation.'" *Commissioner v. Portland Cement Company of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). The Court in *Portland Cement Company* continued:

> We therefore must defer to Treasury Regulations that "implement the congressional mandate in some reasonable manner." To put the same principle conversely, Treasury Regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes."

*Id.* (citations omitted). To sustain the IRS interpretation, the court need not find that its construction is the only reasonable one, or even that it is the result the court would have reached had the question arisen in the first instance in judicial proceedings. *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The administrative interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the [statute]." *Id.* at 16–17, 85 S.Ct. at 801 (citation omitted). The court should reject administrative constructions of a statute only if they are "inconsistent with the statutory mandate or ... frustrate the policy that Congress sought to implement." *Securities Industry Association v. Board of Governors*, 468 U.S. 137, 143, 104 S.Ct. 2979, 2982–83, 82 L.Ed.2d 107 (1984), quoting *FEC v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). Finally, the court should "not defer to administrative constructions of statutes which create nonsensical results, particularly where ... the administrative construction 'frustrate[s] the policy that Congress sought to implement.'" *Curry v. Block*, 738 F.2d 1556, 1560 n. 6 (11th Cir.1984).

*Spriggs v. United States*, 660 F.Supp. 789, which is both the only published case rejecting the IRS interpretation of § 6700 and the most thorough analysis of the issue, concluded that no deference was due the IRS interpretation because that interpretation was contrary to the statutory language and contrary to congressional intent. This court must disagree. The court in *Spriggs* concluded that the IRS interpretation contravened the statutory language, first, because "[h]ad Congress intended the penalty to apply to each sale, it would have so provided—simply by using the words 'such organization or sale' instead of 'such activity' at the end of subsection (a)." *Id.* at 791. But, as the defendant points out in this case, the "activity" prohibited by § 6700 is not just an "organization or sale" of an abusive tax shelter but is the combination of "such organization or sale" *and* making or furnishing a fraudulent statement or gross valuation overstatement as to any material matter. Section 6700(a)(2). In order for the plain language of the statute to be as clear as the court in *Spriggs* would require, the final portion of § 6700(a) would have to impose a penalty based on "the gross income derived or to be derived by such person from such organization or sale and fraudulent statement or gross valuation overstatement." In other words, the phrase "such activity" could reasonably be interpreted to be shorthand for the *combination* of acts and statements prohibited by § 6700.

The court in *Spriggs* found the IRS interpretation contrary to the statutory language, second, because the language of other statutes demonstrates that Congress knows how to speak specifically when it intends to levy a penalty on each act. *Id.* at 791. However, if "such activity" is used as shorthand as described above, Congress has been specific in § 6700 in levying a penalty on each act. Moreover, the other statutory provisions cited by the court in *Spriggs* do not proscribe a combination of actions and statements, but only single actions.[2] To turn the argument around, if Congress had intended the penalties of § 6700 to apply to "the salesperson's overall activity of promoting abusive tax shelters," 660 F.Supp. at 791, it could easily have said *"overall* activity" or "such activi*ties* " or even merely omitted the phrase "from such activity." In short, the "per sale" interpretation of the IRS is a reasonable interpretation of, and is not contrary to, the statutory language.

The court in *Spriggs* also found the IRS interpretation contrary to congressional intent, relying on an excerpt from the House Committee Report in the legislative history of the Tax Reform Act of 1984. That report notes that the penalty for promoting abusive tax shelters was increased from ten percent to twenty percent of the gross income derived from the activity because the Committee believed the ten percent penalty was inadequate "since promoters of tax shelters operate on a large margin." H.R.Rep. No. 432, 98th Cong., 2d Sess. 1, 1357–58, reprinted in 1984 U.S.Code Cong. & Ad.News 697, 1009. The report also states:

The committee did not increase the $1,000 penalty because, as originally enacted, the $1,000 was intended to be a minimum penalty on small promoters

who derive little income from the deals they promote.

*Id.* The court in *Spriggs* interpreted the committee's language to confine the $1,000 penalty only to "small promoters." 660 F.Supp. at 792. The court found it strange that the $1,000 penalty would apply to a plaintiff who earned a fee of $800 on each sale even if he had earned $800,000 by making $1,000 separate sales. To the court, that hypothetical plaintiff could not be considered a "small promoter" and therefore could not be assessed a $1,000 penalty per sale. *Id.* n. 4.

This court is not persuaded that the objections raised by the court in *Spriggs* establish that the per sale interpretation is contrary to congressional intent. First, deriving legislative intent from the words of a subsequent Congress is problematic. "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960). Second, even if the 1984 Act's legislative history is accurate, there is no way to determine from the committee report how Congress defined a "small promoter." It may be that the committee had in mind promoters "who derive little income from" their overall activity, but it is just as reasonable to assume that the committee had in mind promoters "who derive little income from" each sale. It may also be significant that the committee report refers only to promoters of abusive tax shelters and not sellers; because the gross income derived from the activity is normally greater for the promoter than for the salesman, it may be that the $1,000 penalty is often only a minimum penalty for promoters.

One last objection raised by the court in *Spriggs* to the IRS interpretation is that the penalties should apply evenly to all

---

**2.** "For example, the penalty for failing to file an information return or registration statement applies 'in the case of each failure.' 26 USC § 6652(a). The penalty for failing to furnish a statement to an employee, 26 USC § 6674, or to supply a taxpayer identifying number, 26 USC § 6676, or to supply information on a place of residence, 26 USC § 6687, applies to 'each such failure.' A person who assists someone in

understating his tax liability on any document pays a penalty 'with respect to each such document.' 26 USC § 6701(a). In the area of tax shelters, a person who fails to maintain a list of persons who have invested in potentially abusive tax shelters pays a penalty 'for each person with respect to whom there is such a failure.' 26 USC § 6708." *Spriggs,* 660 F.Supp. at 791.

promoters with the same income; i.e., one who sells ten partnership units for $3,000 each should pay the same penalty as one who sells one partnership unit for $30,000. Under the IRS interpretation, the penalties would be $10,000 and $3,000, respectively. Since the language of the statute will support either approach, the only question is whether the IRS interpretation is unreasonable. This court cannot fathom how it can be considered unreasonable to penalize each violation of § 6700, rather than the overall activity, when the "per sale" interpretation leads to heavier penalties against plaintiffs such as the one in this case and therefore operates as a greater deterrent to the activity proscribed in § 6700.

In summary, for every objection to the IRS interpretation raised by the plaintiff here and discussed by the court in *Spriggs* there is an intelligent and reasonable rebuttal. The plaintiff therefore fails to show that the IRS interpretation is contrary to the statutory language or to congressional intent, and the court must defer to that interpretation. The plaintiff's motion for partial judgment on the pleadings is DENIED. The defendant's motion for partial summary judgment is GRANTED and the IRS method of calculation of penalties under § 6700 is upheld.

SO ORDERED.