AGBANC, LTD., et al., Plaintiffs,

v.

UNITED STATES of America,
Defendant,

Civ. Nos. 87–2235 PHX RCB, Civ. 87–2236 PHX RCB and Civ. 87–2238 PHX RCB.

United States District Court,
D. Arizona.

Nov. 16, 1988.

Jon R. Pozgay, Black, Robertshaw, Copple & Pozgay, P.C., A. Jerry Busby, P.C., Phoenix, Ariz., for plaintiffs.

Stephen M. McNamee, U.S. Atty., Richard G. Patrick, Asst. U.S. Atty., Phoenix, Ariz., John B. Consevage, Trial Atty., Office of Sp. Litigation, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

BROOMFIELD, District Judge.

## INTRODUCTION

Plaintiffs Agbanc Ltd. ("Agbanc"), Ambanc Ltd. ("Ambanc") and John C. McDonnell ("McDonnell") brought suit against defendant, United States of America, under 26 U.S.C. 6703, to contest penalty assessments made against them by the Internal Revenue Service pursuant to 26 U.S.C. 6700 which governs abusive tax shelters. Plaintiffs acquired standing by paying the required jurisdictional amounts (15% of each of the penalties pursuant to Code Section 6703) and filing a Claim for Refund with the IRS which was denied. Plaintiffs subsequently instituted the aforementioned lawsuit to recover the jurisdictional amount paid plus interest as provided by law. Plaintiffs now move for summary judgment on the following grounds:

1) The applicable statute of limitation bars the Internal Revenue Service's penalty assessments ("6700 assessments") against each of the three plaintiffs;

2) Plaintiff Ambanc is entitled to summary judgment because it did not engage in Section 6700 conduct within the meaning of the statute;

3) The method of calculation used by the IRS in assessing plaintiff McDonnell's penalty under Section 6700 is incorrect.

## STATEMENT OF FACTS

This case arises from the organization, promotion and sale in 1983 of purebred Simmental cows to investors by plaintiffs. Although the exact relationship of each plaintiff to the investment program identified as "Agbanc Ltd., Individual Animal Offering" is in dispute, it appears that McDonnell was the President and/or chief executive of Agbanc and Ambanc. The program involved the offering by Agbanc of individual purebred Simmental Heifer Donor cows with optional lease agreements to investors for a purchase price of $69,000 per cow. Ambanc was involved to some extent in the offering through the performance of administrative services for Agbanc. Agbanc purchased the cows from Therriault Creek Ranch ("TCR") and then sold them to individual investors who could then lease his or her cow back to TCR for a term of three years.

In March 1985, the IRS began an investigation of plaintiffs investment program under Section 6700 of the Internal Revenue Code. Section 6700, entitled "Promoting Abusive Tax Shelters," imposes a penalty upon persons who sell interests in abusive tax shelters. Section 6700 specifically provides:

**(a) Imposition of penalty.**—Any person who—

(1)(A) organizes (or assists in the organization of) —

(i) a partnership or other entity,

(ii) any investment plan or arrangement, or

(iii) any other plan or arrangement, or

(B) participates in the sale of any interest in an entity or plan or arrangement referred to in subparagraph (A), and

(2) makes or furnishes (in connection with such organization or sale)—

(A) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter, or

(B) a gross valuation overstatement as to any material matter,

shall pay a penalty equal to the greater of $1,000 or 20 percent of the gross income derived or to be derived by such person from such activity.[1]

Although the IRS apparently began its investigation in March 1985, "6700 penalties" were not assessed until May 1987. In April 1986, an IRS agent drafted a report concerning plaintiffs activities which set forth an assessment figure of $94,350. However, no "6700 penalties" were formally assessed at that time. Plaintiffs claim that they were then informed by the IRS that no "6700 penalties" were to be assessed. In March 1987, plaintiffs filed suit in this Court against the United States, the IRS and IRS employees seeking damages and injunctive relief for alleged Constitutional violations and violations of the Internal Revenue Code. The Court denied the request for injunctive relief and dismissed the Constitutional claims. *See Agbanc Ltd. v. Berry,* 678 F.Supp. 804 (D.Ariz. 1988). The remainder of the action, CIV–87–383, is still pending against the United States.

The "6700 penalties" ultimately assessed by the IRS against plaintiffs which form the basis of this current action include $125,071 against Ambanc, $269,117 against Agbanc and $139,000 against McDonnell. Plaintiffs contest these assessments and move for summary judgment on the grounds set forth above.

## SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment should issue, the facts and inferences from these facts are viewed in the light most favorable to the non-moving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356–1357, 89 L.Ed.2d 538 (1986).

Under recently enunciated standards set forth by the United States Supreme Court, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is any factual issue which might affect the outcome of the case

---

1. Pub.L. 98–369 amended the section by substituting "20%" for "10%" in the section that describes the amount of the penalty. The "20%" provision became effective July 19, 1984.

under the governing substantive law. *Id.* 106 S.Ct. at 2510. A material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* 106 S.Ct. at 2510.

At the summary judgment stage, the trial judge's function is to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, the judge may grant summary judgment. *Id.* 106 S.Ct. at 2511.

### STATUTE OF LIMITATIONS

■ Plaintiffs first move for summary judgment on the ground that the statute of limitations bars the IRS assessment of 6700 penalties. Section 6700 does not itself specify a limitation period within which a 6700 assessment must be made. However, plaintiffs claim that in such circumstances, an analogous statute of limitations must be looked to in determining the applicable limitation period. Plaintiffs claim that such an analogous statute is 26 U.S.C. § 6501 which provides that the IRS has 3 years after a taxpayer's return is filed or due to assess any tax. According to plaintiffs, the sale of the cows were made in 1983 while the 6700 assessments were not made until May 1987 resulting in more then a 3 year lapse between the transaction and the assessments. Thus, the IRS actions are barred by the statute of limitations.

The Government argues that in the absence of a specific statute of limitations, none should be implied or imposed. The Government further argues that the 3 year limitation period for assessing taxes is inapplicable to 6700 penalties since the former depends upon the filing of a tax return while the latter does not.

■ The Court's research indicates that while a few cases have raised the issue of a limitations period for 6700 assessments, none have directly ruled on the matter. *See Houston v. United States,* 682 F.Supp. 340 (W.D.Mich.1988); *Agbanc Ltd., v. Berry,* 678 F.Supp. 804 (D.Ariz.1988).

Consequently, absent a specific statute of limitations, the Court declines plaintiffs invitation to create or analogize one from another statute. To create a limitations period in this particular situation where one does not exist is not the province of this Court but rather that of the Congress. The Court recognizes the principle that in federal civil law cases where there is no federal statute of limitations expressly applicable, "we do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. International Broth. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). That is indeed the law with regard to civil actions involving private parties. That is not the law with regard to actions involving the United States. It is well settled that the United States is not subject to statutes of limitations in enforcing its rights unless Congress explicitly provides otherwise. *United States v. Tri–No Enterprises, Inc.,* 819 F.2d 154, 158 (7th Cir.1987); *United States v. Podell,* 572 F.2d 31, 35 n. 7 (2nd Cir. 1978). If an act creating a governmental right of action contains no limitations period, and no general statute of limitations applies, the government may seek recovery under the act at any time. *United State v. City of Palm Beach Gardens,* 635 F.2d 337, 341 (5th Cir.1981), *cert. denied* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981).

Section 6700 contains no specific statute of limitations and this Court is unwilling to construe the 3 year limitation period in Section 6501(a) for assessing taxes as a general statute of limitations. Section 6501(a) depends upon the filing of a tax return to begin the running of the limitations period. To the contrary, Section 6700 assessments do not depend on the filing of a tax return. Rather, assessment of 6700 penalties occur after the IRS becomes aware that an individual's activities are prohibited by Section 6700. As a practical matter, it would be difficult to ascertain when the limitation period should begin to

run, i.e, when the prohibited activity took place or when the IRS became aware of the prohibited activity. That is a matter the Court need not resolve.

Accordingly, plaintiffs motion for summary judgment on the ground that the 6700 assessments are barred by the statute of limitations is denied.

### PLAINTIFF AMBANC'S ACTIVITIES

█ Plaintiffs second basis for summary judgment is that plaintiff Ambanc cannot be subject to Section 6700 penalties since it did not organize or participate in the Agbanc Cattle Investment program. Plaintiffs maintain that under Section 6700, only those persons or entities who (1) organize or participate in an investment plan or arrangement and (2) make or furnish gross overvaluation statements in connection therewith, may be subject to liability. Plaintiffs argue that there is no evidence to show that Ambanc took any part in organizing the subject donor cow sales nor did it provide any valuation statements. They assert that Ambanc merely provided administrative services. As a result, plaintiff claims that there is no genuine issue of fact to subject Ambanc to 6700 liability.

Under Fed.R.Civ.P. 56(e), the party opposing a motion for summary judgment cannot rest upon mere allegations or denials in his or her pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Matsushita, supra,* 106 S.Ct. at 1356. The Government plainly meets this burden. Exhibit B to United States' Local Rule 11(i) Statement of Facts is a letter from John McDonnell as President of Ambanc, Ltd. to Rick Vredenburg of Therriault Corporation dated April 7, 1983. The opening paragraph of the letter reads as follows:

> Ambanc, Ltd. (hereinafter referred to a Ambanc) submits this as a letter of understanding and firm intent to perform specified services for Therriault Corporation (hereinafter referred to as Therriault) *in structuring and packaging an investment program* which will provide Therriault with the opportunity to lease purebred Simmental donor heif-

ers ("Donor Cow Program") (emphasis added).

The letter goes on to specify the various activities Ambanc would perform including purchasing of investment cows (Exhibit B, paragraph 1), and managing and packaging the investment program (Exhibit B, paragraphs 5–7). In addition, paragraph 9 of the letter specifically states: "Distribution of all offerings shall be coordinated by Ambanc." Exhibit C to the Governments' Statement of Facts is a management and services agreement between Agbanc and Ambanc dated August 1, 1983 which relates to various services to be provided by Ambanc to Agbanc with regard to the Donor Cow investment program. The Government includes several other exhibits which relate to Ambanc's alleged participation in the investment program.

As a result, Ambanc cannot claim that it provided only administrative services in light of the foregoing evidence of its participation in the organizing, structuring, packaging and distribution of the offerings. In *United States v. United Energy Corporation,* No. C–85–3655 RFP (CW), 1987 U.S. Dist. Lexis 10514 (N.D.Cal.1987), [1987 WL 4787], the court stated that a person or entity cannot insulate itself from section 6700 liability merely by employing salespeople who actually made the false statements. In other words, Ambanc cannot escape liability just because all actual offerings containing the alleged overvaluation statements were in Agbanc's name. Sufficient factual evidence exists to suggest that Ambanc did indeed participate in some manner or capacity in the investment program which is the subject of Section 6700 liability. Whether that participation was extensive enough to hold Ambanc liable constitutes a genuine issue of material fact to be determined upon the evidence by the trier of fact at trial rather then by the Court on summary judgment.

### COMPUTATION OF SECTION 6700 PENALTY AGAINST McDONNELL

█ Plaintiffs final basis for summary judgment is that plaintiff McDonnell is entitled to partial summary judgment limiting

the amount of the assessment against him to $1,000. As noted previously, Section 6700 relates to any person who organizes, assists in the organization and/or participates in the sale of any interest in an investment plan deemed to be an abusive tax shelter. Section 6700 specifies a penalty amount equal to the greater of $1,000 or 10 percent of the gross income derived from the activity, (*i.e.*, organizing, assisting in the organization and/or participating in the sale).[2]

Plaintiffs claim upon sworn affidavit that McDonnell derived no income from the donor cow sales. Consequently, McDonnell's 6700 liability, if any, should be limited to $1,000. The IRS, meanwhile, claims that McDonnell owes $139,000 in 6700 penalties. The IRS calculated the $139,000 penalty by multiplying $1,000 times 139 separate investors who invested in the 1983 Agbanc Cattle Investment Program by virtue of McDonnell's participation in the promotion, organization and sale of the investment plan.

There are two issues which must be addressed by the Court. The first concerns the proper method of calculation in determining the amount of a 6700 penalty. There is a split among the courts regarding whether the $1,000 penalty can be assessed with respect to each sales or organizational activity or whether the $1,000 is a minimum penalty, any larger amount being a percentage of gross income derived. As evidenced by the $139,000 assessment, the IRS believes that the $1,000 penalty should be assessed on each sale or investment activity. Plaintiffs claim that under *Spriggs v. United States*, 660 F.Supp. 789 (E.D.Va.1987). *aff'd without op.* 850 F.2d 690 (4th Cir.1988), Section 6700 does not provide for a penalty of $1,000 per sale but rather a maximum penalty of $1000 to be applied only if the $1,000 amount exceeds 10% of the gross income derived by the assessed party.

There appears to be eight District Court decisions rendered on this issue with the courts split four in favor of the IRS position and 4 in support of the taxpayers' position.[3] In this Circuit, *Bond v. United States*, No. CV 87–1122 J.G.D. (C.D.Cal. 1987), *appeal docketed*, No. 88–5799 (9th Cir. Mar. 16, 1988) which followed *Spriggs* in holding that the statutory formula of section 6700 is to be applied based on related gross income per year and not based upon related individual sales transactions, is awaiting review and decision by the Ninth Circuit. As a result, the Court does not feel compelled to drop its hat into the frey. Consequently, it declines to rule as a matter of law on partial summary judgment that the amount assessed McDonnell be limited to $1,000. Conversely, the Court is not ruling that the IRS's current assessment of $139,000 is correct as a matter of law. The Court prefers to wait until such time as a decision is rendered by the Ninth Circuit Court of Appeals providing direction and guidance on the subject. At that time, either party may then apply for summary judgment on this particular issue. The Court, however, is not inclined to delay trial solely to await the Ninth Circuit's decision. A ruling will be issued before trial if the Ninth Circuit has not yet acted.

■ The second issue concerns the factual dispute concerning the amount of money McDonnell did indeed earn as a result of his participation in the investment program. This information is necessary should the *Spriggs* method of calculation ultimately be employed. Plaintiffs allege

---

2. The 10% assessment is the result of plaintiff's activities taking place prior to the July 19, 1984 effective date for the 20% assessment.

3. *See Waltman v. United States*, 618 F.Supp. 718 (M.D. Fla.1985); *Johnson v. United States*, 677 F.Supp. 529 (E.D.Mich.1988); *Popkin v. United States*, 699 F.Supp. 893 (N.D.Ga.1988); and *Gates v. United States*, 694 F.Supp. 610 (E.D.Ark. 1988) upholding IRS $1,000 per sale method of calculation. *But see, Spriggs*, 660 F.Supp. 789 (E.D.Va.1987), *aff'd without op.* 850 F.2d 690 (4th Cir.1988); *Hersch v. United States*, 685 F.Supp. 325 (E.D.N.Y.1988); *Bowen v. United States*, 84 B.R. 214 (Bankr.D.Ut.1988); and *United States v. H & L Schwartz, Inc.*, (Bond v. U.S.) No. 84–5497 JGD (C.D. Cal.1987) [1987 WL 45223] holding that IRS was limited to penalty assessment no greater than 10 percent of gross income derived.

that the IRS has had over three years to conduct an investigation of McDonnell's income and yet the IRS still claims that factual discovery is needed to determine the exact amount of revenue derived by McDonnell. Plaintiffs argue that no further discovery should be allowed and since McDonnell's lack of income from the investment program has not been controverted by the IRS, summary judgment should issue. The Court agrees that the IRS has had an inordinate amount of time to conduct its investigation. However, defendant's attorney has submitted a Rule 56(f) statement stating that the Government's discovery has focused upon plaintiffs allegations of wrongful disclosure by the IRS and not on the section 6700 penalties that form the basis of the refund suits that were recently consolidated with this action. This Court will deny plaintiffs motion for summary judgment on this issue and will allow the Government additional time to discover the amount of revenue, if any, plaintiffs derived from the cattle investment program. This is without prejudice, however, to plaintiff McDonnell reasserting his motion at a later date after sufficient time for discovery has taken place.

IT IS ORDERED denying plaintiff's motion for summary judgment on all grounds without prejudice to plaintiffs filing another motion for summary judgment on the issue of calculating Section 6700 penalties when that issue is decided by the Court of Appeals or on the issue of plaintiff McDonnell's income from the sales after further discovery has taken place.