**PLANNED INVESTMENTS, INC.,**
Michigan Corporation,
Plaintiff–Appellee,

v.

**UNITED STATES of America,**
Defendant–Appellant.

No. 88–1668.

United States Court of Appeals,
Sixth Circuit.

Argued May 18, 1989.
Decided Aug. 10, 1989.

Thomas A. Klug (argued), Okemos, Mich., for plaintiff-appellee.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Jonathan S. Cohen (argued), U.S. Dept. of Justice, Tax Div. Appellate Section, Washington, D.C., Gary R. Allen, Acting Chief, William S. Rose, Jr., Asst. Atty. Gen., Jane S. Kimball, Dept. of Justice, Tax Div., Washington, D.C., S. Hollis Fleischer, Washington, D.C., for defendant-appellant.

Before: ENGEL, Chief Judge, MERRITT and KRUPANSKY, Circuit Judges.

MERRITT, Circuit Judge.

The issue in this tax case is the adequacy of the notice sent by the Internal Revenue Service ("IRS" or "Government") to inform plaintiff, Planned Investments, Inc. ("PI") that it had been assessed a penalty of $64,000 under § 6700 of the Internal Revenue Code ("Code"), 26 U.S.C. § 6700, for PI's promotion of an abusive tax shelter. The District Court, finding that the notice was inadequate and unfair because it did not clearly specify the time period involved, granted summary judgment to plaintiff and abated the penalty. The Government appeals the grant of summary judgment to PI and the District Court's later denial of its motion for reconsideration of the grant of summary judgment. The notice complied with the applicable statutory form and the unfairness, if any, of the failure to specify correctly the time period was cured by the prior dealings between the parties which show that PI knew exactly what conduct the notice was intended to cover. Accordingly, we reverse.

I.

The facts are not in dispute. PI was incorporated on December 10, 1982, with the stated purpose of evaluating business ventures and finding investors for those ventures. During December, 1982, PI, through an agent, sold 115 interests in a "product" known as the "Children's Classics Series," a master recording tax shelter lease, which was organized, published and produced by Oxford Productions Corporation. As a result of commissions from the sales, PI realized gross income of $64,000. As part of its sales effort, PI furnished investors with promotional materials, prepared by Oxford Publications, which allegedly contained gross overstatements of the value of the master recordings. PI filed a tax return for the tax period December 10, 1982 through November 30, 1983, which reflected the $64,000.

In January, 1983, PI's attorney advised the corporation of potential § 6700 penalties because of its sales of the tax shelter. Shortly thereafter, PI ceased its sales activities. PI has had no income from the sale of any tax shelter since December, 1982. During late 1984, PI became aware that the IRS had conducted an investigation of Oxford and had, in fact, treated the Children's Classics Series as an abusive tax shelter.

Pursuant to an IRS letter dated February 26, 1985, an attorney and an accountant representing PI met with an IRS agent regarding PI's involvement in the Children's Classics Series. On September 10, 1985, PI received a second letter from the IRS which informed PI that the IRS was considering recommending the assessment of a penalty under § 6700 and which invited PI to present any facts or legal arguments before a final decision was made. PI's counsel met with an IRS agent again on September 18, 1985. At this meeting PI's involvement in the Children's Classics Series tax shelter was again discussed.

On March 3, 1986, the IRS sent PI written notification that it was assessing a $64,000 penalty for the promotion of an abusive tax shelter. The notice erroneously stated that the "Tax Period" was December 31, 1985 and incorrectly stated the formula that had been used to calculate the penalty.[1] The notice also outlined the procedures for contesting the assessment but did not contain any description of the specific activity upon which the penalty was based.

On March 28, 1986, PI, pursuant to § 6703 of the Code,[2] paid the IRS $150[3] and filed a claim with the IRS for abatement of the penalty and a refund of the $150. The IRS, by letter, disallowed the claim on September 16, 1986. The letter denying the claim bore the heading: "In Re: Section 6700: Promoting Abusive Tax

Shelter Penalty" and correctly stated the amount of the penalty as $64,000. The letter, however, incorrectly stated: "Tax Period Ended: Related to 1985 Form 1040."

On October 6, 1986, PI timely filed its complaint in the District Court, seeking a refund of the $150 payment and an abatement of the penalty. Cross-motions for summary judgment were eventually filed, and the parties entered into a stipulation of the material facts.

The District Court granted summary judgment for PI. *Houston v. United States*, 682 F.Supp. 340 (W.D.Mich.1988). Acknowledging that the notice need not take any particular form, the court held that the notice must meet certain minimum "substantial requirements" sufficient to impart the taxpayer with "fair notice." *Id.* at 341. Relying on a line of cases defining the requirement for a notice of deficiency, the court said that a correct statement of the tax period involved must be included in the notice. *Id.* Concluding that PI did not receive any guidance from the notice of the time period involved, the court ruled that the notice received by PI was invalid. *Id.* at 341-42.

The District Court further rejected the Government's contention that the December 31, 1985 date on the notice represented the end date of the applicable time period. *Id.* at 342. The court reasoned that PI could not have reasonably been expected to

1. The notice stated that the penalty was "the greater of $1,000 or 20% of the gross income derived or to be derived from the activity." At the time the alleged conduct occurred, however, the penalty for promoting an abusive tax shelter was the greater of $1,000 or 10% of the gross income derived or to be derived from the activity. The "20%" of the gross income language was substituted by a 1984 amendment and did not become effective until July 18, 1984. Pub.L. No. 98-369, § 143(a), 98 Stat. 682 (1984). The 1984 amendment's penalty is concededly inapplicable to PI's 1982 conduct.

2. Section 6703(c)(1) of the Code provides that levy or collection of the penalty may be delayed pending the resolution of the matter by the district court:
   [i]f, within 30 days after the day on which notice and demand of any penalty under section 6700 ... is made against any person,

such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid....
26 U.S.C. § 6703(c)(1). Section 6703(c)(2) provides that such levy and collection may be delayed if suit is brought in the district court before the earlier of thirty days after the claim for refund is denied or thirty days after the expiration of six months after the day the claim for refund was filed. 26 U.S.C. § 6703(c)(2).

3. PI arrived at the $150 figure by treating the $64,000 as a divisible assessment and assuming that PI was assessed $1,000 for each of 64 different activities. By treating the assessment as divisible, PI was required to pay only 15% of the penalty ($1,000) assessed for one of the 64 activities, or $150. The government does not contest this manner of treating the penalty.

figure out from the 1985 date that it was being penalized for conduct in 1982, especially considering that the notice stated that the statute upon which the penalty amount was premised was passed in 1984. *Id.*

Finally, the District Court rejected the Government's argument that even if the notice was defective, PI was not prejudiced or misled thereby because it actually knew, from prior dealings with the IRS, exactly what the charged conduct was and when it occurred and had a full opportunity to contest the charge. *Id.* at 342. The court reasoned that it should not allow PI's subjective knowledge to excuse the IRS from its obligation to give fair notice, especially since the IRS's conduct here was "not merely neglectful, but slipshod." *Id.* at 342–43. Accordingly, the District Court found the notice invalid and unenforceable. The Court further abated the penalty and granted PI a refund of $150 plus interest.

On appeal, the Government contends that the District Court erred (1) in finding that the notice was insufficient because it did not clearly and correctly state the period of time during which the penalized conduct occurred and (2) in rejecting the argument that even if the notice was insufficient the notice should be enforced because PI was not misled or prejudiced by the defect in notice.

## II.

Section 6700 of the Code imposes on any person who promotes an abusive tax shelter a penalty calculated with reference to "the gross income derived or to be derived by such person from such activity." 26 U.S.C. § 6700(a). Section 6671 provides that all penalties provided by Subchapter B of Chapter 68 (which includes § 6700) "shall be paid upon notice and demand ... and shall be assessed and collected as taxes." 26 U.S.C. § 6671(a).

■ Chapter 63 of the Code, 26 U.S.C. §§ 6201–45, governs assessment of taxes. Accordingly, given the § 6671(a) instruction that an abusive tax shelter penalty be assessed "as taxes," Chapter 63 provides the mechanism for assessment of the abusive tax shelter penalty.

Chapter 63 provides for two modes of assessment—a special deficiency procedure in Subchapter B to be used for assessment of income, estate and gift taxes, and a general procedure in Subchapter A for assessment of other taxes. Section 6703, however, provides that the special deficiency procedures of Subchapter B, established for assessment of income, estate and gift taxes, shall not apply to the assessment or collection of § 6700 penalties. 26 U.S.C. § 6703(b). Section 6700 penalties, therefore, must be assessed under the procedures set forth in Subchapter A.

Section 6203 of Subchapter A provides that assessment be made by recording the liability in accordance with the regulations promulgated by the Secretary. 26 U.S.C. § 6203. Upon request, a taxpayer may obtain a copy of the assessment. *Id.* Treasury regulations provide that the assessment be made by signing the summary record of assessment. 26 CFR § 301.6203–1. The summary record, through supporting documents, must contain the following:

1) identification of the taxpayer;

2) character of liability assessed;

3) taxable period, if applicable; and

4) amount of assessment.

*Id.* The regulations further provide that, upon request, the taxpayer may obtain a copy of the "pertinent" parts of the assessment, *i.e.*, those parts which set forth the name of the taxpayer, the date of assessment, the character of the liability, the amount assessed and the taxable period, if applicable. *Id.*

■ In accord with the § 6671(a) mandate that § 6700 penalties be assessed and collected as taxes, Chapter 64, which sets forth the rules for collection of taxes, governs the collection of § 6700 penalties. Section 6303 of Chapter 64 provides the general rule for the notice and demand for tax:

> after the making of an assessment of a tax pursuant to section 6203, [the IRS shall] give notice to each person liable

for the unpaid tax, stating the amount and demanding payment thereof. 26 U.S.C. § 6303(a). Section 6303 does not prescribe any particular form of notice. Treasury Regulations promulgated under the authority of § 6303 merely parrot the statutory language that the notice shall state the amount of the tax and demand payment thereof. 26 CFR § 301.6303–1(a).

### III.

■ Construing the plain language of the statutes and regulations outlined above, it becomes evident that the form of notice of assessment of a § 6700 penalty requires only a statement of the amount of the penalty and a demand for payment. It is also clear that the notice sent to the plaintiff in this case complied with these requirements as the notice identified the amount assessed and demanded payment.

In holding that the tax period involved should be included in the notice, however, the District Court applied the rules regarding notices of deficiency to the instant notice of assessment. Indeed, all the cases cited by the District Court for the proposition that the tax period involved must be included in the notice were Chapter 63, Subchapter B cases. *See, Scar v. Commissioner,* 814 F.2d 1363 (9th Cir.1987); *Benzvi v. Commissioner,* 787 F.2d 1541 (11th Cir.), *cert. denied,* 479 U.S. 883, 107 S.Ct. 273, 93 L.Ed.2d 250 (1986); *Abrams v. Commissioner,* 787 F.2d 939 (4th Cir.), *cert. denied sub nom. Eggleston v. Commissioner,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986). Such treatment ignores the prohibition of § 6703 that the deficiency procedures of Subchapter B do not apply to § 6700 penalties and also ignores the reality that § 6700 penalties are not assessed for discrete taxable years but for conduct and transactions which may occur over one or many taxable years, not on an annual basis. *See* 26 U.S.C. § 6700. We conclude, therefore, that such treatment by the District Court was error and that the notice complied with the requirements of the statute.

### IV.

Our inquiry, however, does not end here. The notice must meet the general "fairness" requirement of due process. The District Court rejected the Government's argument that the court need not reach the due process question because, notwithstanding any defects in the notice, the notice was "fair" since PI had been informed through its dealings with the IRS of the particular conduct that was being penalized and was, therefore, not prejudiced or misled. The District Court held that in no event could PI's subjective knowledge cure the defect in notice.

■ Again, the District Court erred. Notices containing technical defects are valid where the taxpayer has not been prejudiced or misled by the error and is afforded a meaningful opportunity to litigate his claims. *Marvel v. United States,* 719 F.2d 1507 (10th Cir.1983) (notice contained name of corporation rather than names of individual taxpayers); *Allan v. United States,* 386 F.Supp. 499 (N.D.Tex.), *aff'd,* 514 F.2d 1070 (5th Cir.1975) (notice contained name of wrong corporation); and *Wood Harmon Corp. v. United States,* 206 F.Supp. 773 (S.D.N.Y.1962), *aff'd,* 311 F.2d 918 (2d Cir. 1963) (notice did not state correct time period).

■ In this case it is undisputed that PI was apprised by the IRS long before the formal notice of assessment was issued that the IRS would challenge its activity in 1982 involving the promotion of the Oxford "Children's Classics Series" recording tax shelter. The record reflects that pre-assessment conferences were held with PI and that PI's claim for refund, filed soon after the notice was received, argued not only that PI was not involved in such activity in 1985, but also that its 1982 involvement did not violate § 6700. This record therefore, shows that PI was not misled.

Moreover, PI has been afforded an opportunity to contest the assessment of the penalty. Indeed, this very lawsuit constitutes that opportunity as provided in § 6703(c). PI cannot, therefore, argue that it has been given no opportunity to contest the assessment.

V.

For the foregoing reasons, we reverse the decision of the District Court and remand this case for further proceedings.

ENGEL, Chief Judge, concurring.

I fully concur in Judge Merritt's concise and well balanced opinion. As he explains, section 6700 penalties for abusive tax shelters are to be assessed and collected "as taxes." 26 U.S.C. § 6671(a). Moreover, the Code and applicable regulations further require only that notices of such assessments include the amount of the penalty and a demand for payment thereof. 26 U.S.C. § 6303(a). Thus, to the extent the district court held that the Code itself requires something more, I agree that the court below erred.

I write only to emphasize that because we believe that the assessee was neither prejudiced nor misled, we do not reach the due process question ultimately raised by this statutory scheme. I, like the district judge, however, entertain some serious reservations concerning the validity if not the wisdom of the bare bones notice apparently required by Congress in these cases. There is in the statutory framework the potential for abuse through mistake or even, perhaps, vindictive purpose because there is no requirement that an assessee be notified of the exact nature and time period of the challenged conduct. Whether, in such a case, the post-assessment remedies or even the pre-assessment notice will be sufficient to satisfy procedural due process can be left, however, to another day for certainly no such evil occurred here. I simply write to make it clear that we do not intend to preclude that kind of constitutional scrutiny at a later date.