John A. SAGE, Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

Nos. 89–2780, 89–6090.

United States Court of Appeals,
Fifth Circuit.

Aug. 13, 1990.

**19**

GEE, Circuit Judge:

Appellant John A. Sage obtained judgment in federal district court against the United States, the central holding of which was that the three-year statute of limitations in Section 6501(a) of the Internal Revenue Code barred the IRS's assessment of penalties against him pursuant to Section 6700. From that judgment the United States now appeals contending, in the main, that Section 6501(a) does not apply to bar Section 6700 penalties and that the only curb on the government's penalty-assessment power lies in the doctrine of laches (which was not raised by Sage in district court). The other issues raised for review reduce to the consideration of two questions: First, did the district court err in holding that minor informational defects in Sage's penalty notice rendered it invalid. Second, and the only part of the district court's ruling that Sage challenges, is whether the district court erred in denying Sage relief (in the form of a protective order, but in substance, an injunction) from the government's use of his and Mrs. Sage's 1982 income tax refund as a set-off against the penalties assessed Sage. We hold today that, on the crucial issue of limitations, Section 6700 is untrammeled by any statutory time-bar and that laches alone provides preclusive effect on the IRS's penalty power. We hold, too, that Sage's penalty notice complied with applicable statutory requirements. Further, Sage's actual knowledge of the information not provided in his penalty notice cured the defective notice of which he complains. Consequently, as to the first two issues we reverse the judgment of the district court. The district court's ruling on the injunction issue remains, however, intact. Sage failed in district court and has clearly failed before us to meet the threshold burden for the issuance of an injunction: a colorable showing that the government would not ultimately prevail on the merits.

Nancy G. Morgan, Gary R. Allen, Chief, Appellate Section, Tax Div., David Brunori, Atty., John Boyle and Seth G. Heald, U.S. Dept. of Justice, Washington, D.C., for U.S.

Edward D. Urquhart, Charles J. Escher, and Silvia T. Hassell, Houston, Tex., for John A. Sage.

Before THORNBERRY, GEE and BARKSDALE, Circuit Judges.

*Facts and Disposition of the District Court*

Section 6700 of the Internal Revenue Code imposes a penalty upon, *inter alia,*

persons who sell interests in abusive tax shelters. John A. Sage was the sole shareholder of a corporation known as The Huntington Group, Inc., which was the general partner in twelve limited partnerships. During 1982 and 1983, Sage organized, marketed and participated in the sale of 421 interests in these partnerships. The IRS began investigating Sage's promotion and sale of the limited partnerships as tax shelters. On August 31, 1987, personnel of the IRS District Counsel's office met with Sage and his legal representatives to discuss the Section 6700 penalties that were to be assessed for the 1982 and 1983 formation of the limited partnerships. During this meeting Sage and his legal representatives discussed in detail the formation and sale of the partnership's interests in 1982 and 1983. Sage attempted to convince the IRS that the limited partnerships were not illegal tax shelters and that he was not liable for the Section 6700 penalties. Sage was, therefore, aware of the conduct under scrutiny by the IRS as well as of the time period (1982–1983) during which these shelter sales allegedly occurred.

The IRS assessed the Section 6700 penalties on July 8, 1988, and on that same day provided Sage with written notice of the assessment and demanded payment. The notice was labelled "Notice of Penalty Charge" and was properly addressed to John A. Sage. It stated that "You have been assessed a penalty under Section 6700 of the Internal Revenue Code for promoting abusive tax shelter." The notice also set forth the amount of the penalty assessment ($332,750), the procedures to be followed in the event that Sage wished to contest the assessment, the date of notice (July 8, 1988), and the appropriate taxpayer identifying number.

Sage paid $1,800 as part payment of the Section 6700 penalty assessment and filed a Form 843 "claim" in which he sought a refund of the $1,800 and abatement of the balance of the penalty. The IRS disallowed Sage's claim for refund.

Sage then filed suit against the United States, seeking a refund of the $1,800 and arguing along several lines that he was not liable for the Section 6700 penalties. Sage maintained, as he had before the IRS, that the assessment of the Section 6700 penalties was barred by the statute of limitations of Section 6501(a) because the assessment was not made within three years of the last limited partnership sale. He also argued that the notice of assessment was invalid because it did not indicate the years in which the activity allegedly occurred and, thus, failed to provide "fair notice" of the activity sought to be penalized. Sage further asserted that the IRS's calculations of the Section 6700 penalties were incorrect, that the penalties as computed violated his constitutional rights to substantive and procedural due process, and that the penalties were applied in "bad faith." Finally, Sage contended that, in any event, he was not liable for Section 6700 penalties because the sales of the limited partnerships did not amount to illegal tax shelter activities.

The district court granted summary judgment for Sage. The court held, citing *Spriggs v. United States*, 660 F.Supp. 789 (E.D.Va.1987), *aff'd without opinion*, 850 F.2d 690 (4th Cir.1988), that the Section 6700 penalty is subject to the statute of limitations on assessment of taxes set forth in Section 6501 "because the penalty tax must be assessed and collected in the same manner as taxes, as set forth in I.R.C. § 6671(a)." The court stated that, because all activities regarding the partnership had terminated by December 31, 1983, the assessment should have been made within three years of that date. Alternatively, the court stated that the penalty must have been assessed within three years of the date (August 15, 1984) on which Sage filed his 1983 tax return.

The court also held, citing *Houston v. United States*, 682 F.Supp. 340 (W.D.Mich. 1988), that, in any event, the assessment notice was invalid as a matter of law and therefore that Sage was not liable for the Section 6700 penalties because the time period "1988" did not provide "fair notice" of the activity to be penalized.

The district court further determined that the Government's calculations of the Section 6700 penalties were incorrect as a matter of law. Given its resolution of the "fair notice" and statute of limitations is-

sues in Sage's favor, the district court did not reach the question whether John Sage did in fact sell or promote illegal tax shelters.

Sage then filed a Motion for Award of Litigation Costs. Ten days later, the government retained the Sages' (for the first time including Mrs. Sage) income tax refund from 1982 as a set-off against the penalty it had assessed John Sage. Shortly after the government's seizure of Mr. and Mrs. Sages' income tax refund Sage filed his Supplement to Motion for Award of Litigation Costs and Motion for Protective Order seeking additional attorney's fees and seeking relief from the district court for the government's seizure of a refund to pay a debt that the district court had held was not owed. While Sage's post-final judgment motions were pending, the government filed its notice of appeal from the final judgment. The district court entered an order denying Sage's post-final judgment motions and Sage timely appealed from that order. We granted Sage's motion to consolidate the two appeals and coordinate the briefing.

Sage does not appeal the district court's order denying an award of attorney's fees. He appeals only the district court's denial of relief from the government's use of his and his wife's 1982 income tax refund as a set-off against the penalties assessed against him, penalties that the district court held were unlawfully assessed.

The United States appeals from the judgment insofar as it holds that the Section 6501(a) statute of limitations bars the assessment of Section 6700 penalties and that the IRS did not provide Sage with fair notice of the penalty. The Government does not appeal from the district court's ruling that the penalties were incorrectly calculated.

### Discussion

I. *Did the district court err in holding the assessment notice invalid because it failed to specify the tax period during which the conduct that violated Section 6700 occurred?*

Section 6700 of the Internal Revenue Code penalizes any person who "orga-nizes" or "participates" in the sale of an interest in "a tax shelter or other arrangement" as to any material matter. The Code provides further that the penalty is immediately assessable upon discovery of a violation, and when the IRS makes an assessment, it must provide the promoter with notice of the assessment, stating the amount and demanding payment. *See* I.R.C. §§ 6203, 6303 and 6671 (1986).

Sage successfully argued before the district court that because his notice of assessment did not indicate the years in which the penalized activity allegedly occurred, it failed to provide him with "fair notice". The government contends that, because it fully satisfied the statutory notice requirements set forth above, and because Sage had *actual* notice of the conduct attracting penalties, the district court erred in holding that the notice of penalty assessment violated the requirement of fair notice by failing to specify the exact time period in which the conduct occurred.

The government maintains that because the case, upon which the district court predicates its holding, has since been reversed, we should likewise reverse the district court. The Sixth Circuit recently reversed the case of *Houston v. United States,* 682 F.Supp. 340 (W.D.Mich.1988) in an unpublished order 888 F.2d 127 (6th Cir.1989) based on its holding in a companion case where the Court held that the district court's holding in Houston was incorrect. *Planned Investments, Inc. v. United States,* 881 F.2d 340 (6th Cir.1989), the companion case to *Houston* (consolidated with it for trial in the district court) involved facts virtually identical to those in the case at bar (the government failed to specify the time period of the conduct the subject of penalties). The Sixth Circuit reversed the district court and held that under the plain language of the statutes and Regulations an assessment of Section 6700 penalties requires only a statement of the amount of the penalty and a demand for payment. 881 F.2d at 344. It further held that, contrary to the district court's

22

opinion, deficiency procedures do not apply to Section 6700 penalties. Therefore, there was no requirement that the notice of assessment contain a specific reference to every year the tax shelter activity had occurred. The Court also noted that Section 6700 penalties are not assessed for discrete taxable years, but for conduct and transactions that may occur over one or many taxable years, and not on an annual basis. The Court therefore held that the notice of assessment before it, nearly identical to the one issued in the present case, satisfied the statutory notice requirements.

■ We find the Sixth Circuit's reasoning in *Planned Investments* persuasive. The fault with the district court's reasoning in today's case is that it failed to recognize that the Section 6700 penalty applies to specific acts and transactions rather than to any discrete time period. The harm targeted by Section 6700 is the *conduct* of the promoter and is, therefore, immediately susceptible to assessment. Once assessment occurs, the Code requires the IRS to provide the promoter with notice of the assessment, "stating the amount and demanding payment." I.R.C. § 6303. The district court compounded its error of law by assuming that information similar to that required to be included in a statutory notice of tax deficiency (such as the year for which an income tax deficiency has been determined) must also be included in a notice of assessment of Section 6700 penalties. Section 6703(b) explicitly states that "[s]ubchapter B of Chapter 63 (relating to deficiency procedures) shall not apply with respect to the assessment or collection of the penalties provided by Sections 6700, 6701 and 6702." This was, of course, the holding in *Planned Investments, Inc. v. United States*, 881 F.2d at 343. The pertinent notice requirements attaching to Section 6700 penalties demand simply that an assessment be made, the amount thereof stated and a demand for payment extended. *See* I.R.C. §§ 6671 and 6303. This conclusion is entirely consonant with the fact that, unlike income tax assessed annually, the Section 6700 penalty is imposed on a transactional basis, based on individual instances of prohibited conduct. Thus, the government's notice of assessment com-

plied fully with the statutory requirements even though it did not provide notice of the time period for which penalties were due.

■ Even if we assume, *arguendo*, that the notice was deficient, Sage at all times knew what conduct was at issue and was not prejudiced because he had a full opportunity to contest the merits. Clearly a notice of assessment and demand for payment that contains a technical error will be held valid where the taxpayer has not been misled by the error. *Allan v. United States*, 386 F.Supp. 499 (N.D.Tex.), *aff'd* without published opinion, 514 F.2d 1070 (5th Cir.1975) (notice contained name of wrong corporation). Again, we look to *Planned Investments* as the case factually on all fours with the instant case, and note that the Sixth Circuit held that the taxpayer suffered no harm flowing from the IRS's failure to provide notice of the specific years of prohibited conduct giving rise to the penalty. Taxpayer had been afforded an opportunity to contest the assessment of the penalty, indeed, the Court held that the taxpayer's refund suit itself constituted that opportunity. 881 F.2d at 344. In the case at bar, Sage knew at all times what conduct the IRS sought to penalize and he, too, filed a refund suit armed with that knowledge. Sage, therefore, undoubtedly possessed actual notice of the conduct at issue here. Further, where notice of assessment and demand for payment is at issue (as it is here) rather than the time-specific statutory notice of deficiency, there is even more reason to hold that actual notice should suffice.

Sage's response to the above reasoning is to focus on the exorbitance of the government's miscalculated assessment notice and on its continued attempts to collect the penalty despite the final judgment of the district court. These actions, in Sage's view, flagrantly violate the basic fairness requirements of due process. Sage, however, elides the holding in *Planned Investments* on the issue of notice. Sage's response to the government's argument that he was not prejudiced by the government's failure to specify the year to which penalties attached is to point to a concurring opinion by Chief Judge Engel in *Planned Investments* wherein the learned judge

confesses to reservations concerning the "bare bones notice" ordained by the Court in that case. Sage utterly fails to meet the government's argument head on and offers no reason for his position that a taxpayer with *actual* notice of the conduct under assessment should, nonetheless, be permitted to thwart the government because it failed to tell him what he already knew.

The main thrust of Sage's defense of his summary judgment is that the government's astronomical assessment notice (demanding more than seven times the correct amount) together with the government's decision to continue collection activity even after the district court had held against it, makes the assessment *notice* (as opposed to the actual assessment) invalid as a matter of law because the *notice* is somehow wanting in basic fairness. It is not clear to us, however, that even the—concededly—gross overestimation of the penalty can deprive Sage of basic fairness when he had full opportunity to contest the penalty amount and, in fact, has successfully done so. The government's continued efforts at collection fall properly under the analysis of the district court's ·denial of Sage's motion for a protective order in Part III of this opinion.

Consequently, we hold that the government's actual notice argument prevails and we reverse the judgment of the district court on this issue.

II. *Did the district court err in holding that the three year statute of limitations of Section 6501(a) barred the assessment of Section 6700 penalties against Sage?*

██ Of the questions presented by this appeal, the statute of limitations issue is the closest. Sage's argument weaves various provisions of the Code into a sort of statutory imbrication that, he suggests, lends harmony to the scheme of penalty assessment. The government, on the other hand, confines itself to a strictly textual reading of the Code, arguing that the anti-fraud machinery of Section 6700 must not be crippled by the engrafting onto it of a limitations period.

Sage contends that the general limitations period prescribed by Section 6501(a) [1] for "any tax" bars the assessment of penalties under Section 6700. Section 6671(a) [2] (appearing with Section 6700 in the assessable penalties part of the Code—Subchapter B) provides that the assessable penalties of that part shall be "assessed and collected in the same manner as taxes" and that any reference to "tax" "shall be deemed also to refer to the penalties and liabilities provided by this subchapter." *Spriggs v. United States,* 660 F.Supp. 789 (E.D.Va.1987), *aff'd without opinion,* 850 F.2d 690 (4th Cir.1988) upon which the district court relied in adopting the position . advanced by Sage here, stands for the proposition that Section 6671(a) requires that penalties under subchapter B be computed in the same manner as taxes (i.e., on an annual basis). From this Sage intuits that Section 6501(a)'s limitations period for tax· assessments applies to penalty assessments. Thus, Sage contends, the penalty assessment in this case is barred by that three year statute of limitations because the assessment date of July 8, 1988, is over three years past Sage's last activities alleged to be subject to the penalty. Sage's last relevant activities, it is undisputed, oc-

---

**1.** Section 6501(a) provides:

(a) **General rule.**—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

**2.** Section 6671(a) provides:

(a) **Penalty assessed as tax.**—The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes. Except as otherwise provided, any reference in this title to "tax" imposed by this title shall be deemed also to refer to the penalties and liabilities provided by this subchapter.

curred no later than December 31, 1983, more than four and one-half years before the assessment.

Sage argues, further, that Section 6671(a) also thereby applies the general six year statute of limitations on *collection* to the Section 6700 penalty. The language of Section 6671(a), again, requires that the subchapter B penalties be "assessed and collected" in the same manner as taxes. There is no reasoning or credible authority, according to Sage, for treating a subchapter B penalty, such as the Section 6700 penalty, one way for assessment and another way for collection. Section 6671(a) requires the same treatment for both, not opposite treatment. The fact that the statute of limitations on collection applies to a Section 6700 penalty is indisputable, the argument runs, in light of the direct reference to Section 6502 in Section 6703(c).[3]

Sage contends that the reference in Section 6703(c) to the applicability of the statute of limitations on collection in Section 6502 is important for another reason. The statutory framework of Sections 6501 and 6502 is such that there must be a statute of limitations on assessment before a statute of limitations on collection can apply. When Section 6703(c) refers to Section 6502, the statute of limitations on collection, it by definition references Section 6501, the statute of limitations on assessment. Therefore Section 6700 is, we are told, subject to both statutes of limitations if it is subject to the statute of limitation on collection.

 The government replies by setting forth the preferred status of the United States vis-a-vis statutes of limitation. The United States is not subject to statutes of limitations in enforcing its rights unless Congress explicitly provides otherwise. *United States v. City of Palm Beach Gardens*, 635 F.2d 337, 339 (5th Cir.1981), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). Statutes of limitations must receive a strict construction in favor of the government. *Badaracco v. Commissioner*, 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984).

In direct response to Sage's arguments, outlined above, the government points out that the plain language of Section 6501(a) sets up the *filing* of a tax return as a prerequisite to the running of the limitations period. Moreover, in the government's view, Section 6501(a) does not bar Section 6700 penalties because the latter do not pertain to any particular tax return or tax year.

Sage answers the government's argument by asserting that when Section 6671(a) states that the word "tax" shall be deemed also to mean the Subchapter B penalties and that the Subchapter B penalties are to be "assessed and collected in the same manner as taxes," Section 6671(a) is simply referring to the procedure of assessing and collecting taxes. According to Sage, the government's argument reads the Internal Revenue Code out of context. Sage contends that his position respects the structure of the Internal Revenue Code and its clear intent. There is no authority, Sage urges, to permit contorting the rules to escape a statute of limitations on one of the Assessable Penalties of Subchapter B, namely the Section 6700 penalty. To do so would do violence to the scheme of the Internal Revenue Code and would inject unnecessary confusion into the applicability of various Code Sections to other Subchapter B penalties governed by Section 6671(a).

We hold that the government's argument states the law on the limitations question. Far from there being a dearth of authority for the government's argument, every court that has considered the issue has held that *no* period of limitations applies to the assessment of Section 6700 penalties. *See Emanuel v. United States*, 705 F.Supp. 434 (N.D.Ill.1989); *Kuchan v. United*

---

**3.** Section 6703(c) provides in pertinent part:

 **(3) Suspension of running of period of limitations on collection.**—The running of the period of limitations provided in section 6502 on the *collection* by levy or by a proceed- ing in court in respect of any penalty described in paragraph (1) shall be suspended for the period during which the Secretary is prohibited from collecting by levy or a proceeding in court. (emphasis added)

*States,* 679 F.Supp. 764, 768 (N.D.Ill.1988) (analogous penalties under § 6701). We find the reasoning of a federal district court in Arizona persuasive on this point. In *Agbanc, Inc. v. United States,* 707 F.Supp. 423 (D.Ariz.1988), the court stated:

> Section 6700 contains no specific statute of limitations and this Court is unwilling to construe the 3 year limitation period in Section 6501(a) for assessing taxes as a general statute of limitations. Section 6501(a) depends upon the filing of a tax return to begin the running of the limitations period. To the contrary, Section 6700 assessments do not depend on the filing of a tax return. Rather, assessment of 6700 penalties occur [sic] after the IRS becomes aware that an individual's activities are prohibited by Section 6700. As a particular matter, it would be difficult to ascertain when the limitation period should begin to run, i.e., when the prohibited activity took place or when the IRS became aware of the prohibited activity. 707 F.Supp. at 426–27.

Moreover, Sage's and the district court's reliance on *Spriggs's* recognition that Section 6700 penalties are calculated in the same manner as taxes (a position that we have today rejected) does not dictate the application of Section 6501(a)'s limitation period on the assessment of taxes to the assessment of penalties. *Spriggs* was concerned solely with the "how" and not with the "when" of assessing penalties.

Sage engages in fine legerdemain in his argument that the language used in Section 6502(a) of the Code (prescribing the period of limitations applicable to *collection* of a Section 6700 penalty), necessarily mandates a statute of limitations on assessment. Sage's contention rests on an impermissible addition of words to Section 6502(a), to-wit, that the statute of limitations on collection exists "only where" the underlying assessment has been made within the applicable limitations period. Section 6502 contains no such language. It simply provides, in pertinent part, that "[w]here the assessment of any tax ... has been made within the period of limitations properly applicable thereto", then the limitations period for collection shall be six

years from the date of assessment. I.R.C. § 6502. Just as with other provisions of the Code enacted to combat fraud no limitations period exists for assessment of a Section 6700 penalty, and consequently no period of limitations is "properly applicable thereto". An assessment made at any time will trigger the Section 6502 period of limitations on collection.

Sage's argument in behalf of Section 6501(a)'s reach, though imaginative, depends too greatly on a filigree of interpretation too overworked to combat the solid interpretation offered by the government. The government's position, with which we entirely agree, is that nothing in the Code cuts down the power of Section 6700, that that Section's concentration on capturing transactional fraud whenever occurring removes it from the stolid tax-return dependent world of Section 6501(a), and that, in any event and as the *Agbanc* court observed, it is not self-evident when the limitations period should begin to run. Our holding today doubtless falls athwart the fond hopes of many a taxpayer and it is, perhaps, cold comfort to note that the doctrine of laches does remain—the only curb on IRS penalty-assessment power under Section 6700.

III. *Did the district court correctly deny Sage's motion to enjoin collection of the Section 6700 penalty by setting off a refund due him against the penalty?*

■ After the district court handed down final judgment in favor of Sage, the IRS seized refunds of income taxes owed Sage and his wife. Sage moved the district court to enjoin further collection and for the return of the overpayment. The district court denied the motion, finding that Sage had failed to satisfy the narrow exception to the Anti–Injunction Act, I.R.C. § 7421(a) as interpreted by the Supreme Court in *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7–8, 82 S.Ct. 1125, 1129–30, 8 L.Ed.2d 292 (1962) viz., that under no circumstances could the government prevail on its appeal of the merits, and that Sage would suffer irrepa-

rable harm in the absence of an injunction. Sage now cross-appeals from the denial of his request for an injunction.

Sage attacks the district court's ruling on three grounds. First, Section 6402(a) of the Code permits an offset of a refund only against a tax *liability*. No Section 6700 *liability* exists in this case because the district court granted Sage's motion for summary judgment to that effect. The government is bound by that holding under the doctrines of res judicata and collateral estoppel. We have held that these doctrines apply even if the judgment is appealed. *Prager v. El Paso Nat. Bank*, 417 F.2d 1111, 1112 (5th Cir.1969).

Second, Sage contends that the district court's holding that the Anti–Injunction Act precluded its issuing an injunction entirely undermines the integrity of the judgment that it handed down and makes a mockery of Sage's due process remedy after he had sought and obtained it.

Third, Sage urges the Court to view the IRS's attempt at set-off as a levy prohibited by Section 6703, which provides that collection activity will cease and the statute of limitations on collection will be suspended while the taxpayer contests the penalty in court. The gist of Sage's argument is that where a Section 6700 litigant has properly invoked the jurisdiction of a district court to determine his Section 6700 liability, as Sage has done in this case, Section 6703(c)(1)[4] preempts application of the Anti–Injunction Act provision of Section 7421(a). Such a Section 6700 litigant does not have to meet the burdensome requirements of the exception to the Anti–Injunction Act. To require the Section 6700 litigant properly before the district court to meet the criteria of the exception to the

Anti–Injunction Act, Sage argues, is to deprive the litigant of the judicial remedy provided by Congress. The injustice is exacerbated in the instant case where the district court entered a final judgment that Sage was not liable for the Section 6700 penalty. To require him now to meet the stringent criteria of the judicially-created exception to the Anti–Injunction Act deprives him of his due process judicial remedy.

It is axiomatic that the Anti–Injunction Act expressly prohibits all suits to restrain the assessment or collection of any federal tax, except as specifically permitted by it or as permitted under a narrow, judicially created exception to its operation. The Act bars taxpayers from challenging their tax liabilities by methods other than those specifically prescribed in the Code for the resolution of tax disputes. Indeed, granting Sage an injunction would have had precisely the effect on the administration of the tax laws that the Act was designed to prevent. Nor does Sage fit within the narrow exception that applies to cases where the moving party establishes not only that, taking the most liberal view of its case, the Government cannot possibly prevail on the merits of its tax claim, but also that there will be irreparable harm because of the unavailability of an adequate remedy at law. *Enochs*, 370 U.S. at 7–8, 82 S.Ct. at 1129–30. Sage has made no attempt to establish that the Government has no chance of prevailing on its appeal of the merits and, indeed, we have been sufficiently impressed today by its arguments to overturn the judgment of the district court. Similarly, Sage cannot establish the possibility of irreparable harm, because he would have received a full refund, together

---

**4.** Section 6703(c)(1) provides:

**(c) Extension of period of collection where person pays 15 percent of penalty.—** **(1) In general.** If, within 30 days after the day on which notice and demand of any penalty under section 6700 or 6701 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall

be made, begun, or prosecuted until the final resolution of a proceeding begun as provided in paragraph (2). Notwithstanding the provisions of section 7421(a), the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court. Nothing in this paragraph shall be construed to prohibit any counterclaim for the remainder of such penalty in a proceeding begun as provided in paragraph (2).

with statutory interest, in the event that the government lost on the merits.

█ Moreover, Sage's contention that the "set-off", on the other hand, constituted a "levy" that was prohibited by Code Section 6703 is equally misconceived. The Supreme Court has held that a levy is a means by which the Internal Revenue Service may acquire possession of a taxpayer's property. *United States v. National Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985); a "set-off", on the other hand, is the application of funds already in the Government's possession against a taxpayer's outstanding tax liability. *United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1601–02, 91 L.Ed. 2022 (1947). Indeed, Treasury Regulations Section 301.7426–(1)(a)(1) expressly states that the Government's exercise of its right under Section 6402 of the Internal Revenue Code to credit any tax refund due a taxpayer against any outstanding tax liability is not a levy. *Accord, Hankin v. United States*, 891 F.2d 480 (3d Cir.1989).

For the foregoing reasons, we hold that the district court's denial of Sage's request for a protective order was proper. Our resolution of the limitations and procedural questions, however, requires us to REVERSE the judgment of the district court.