T.C. Memo. 2021-117

UNITED STATES TAX COURT

JOHN M. CRIM, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16574-17L.                    Filed October 4, 2021.

<u>Joseph A. DiRuzzo III</u> and <u>Daniel M. Lader</u>, for petitioner.

<u>Ryan Z. Sarazin</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case petitioner seeks
review pursuant to section 6330(d)(1) of the determination by the Internal Revenue
Service (IRS or respondent) to uphold a notice of intent to levy.[1]  The IRS initiated

---

[1]Unless otherwise indicated, all statutory references are to the Internal Rev-
enue Code (Code) in effect at all relevant times, and all Rule references are to the
(continued...)

[*2] the levy in an effort to collect penalties assessed against petitioner under section 6700(a) for promotion of abusive tax shelters. Petitioner challenges his underlying liability for the penalties, chiefly on the theory that they were assessed after the period of limitations had expired. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the collection action was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers and the accompanying declarations and exhibits. See Rule 121(b). Petitioner alleges that he resided in Malta when the petition was filed.

During 1999-2003 petitioner promoted a tax shelter scheme involving domestic and offshore trusts. He did so by marketing, selling, and servicing "trust packages." These packages instructed clients to engage in sham paper transactions and falsely represented that these transactions would enable clients to eliminate their Federal income tax liabilities.

---

[1](...continued)
Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

[*3] Petitioner was indicted for conspiracy to defraud the United States, in violation of 18 U.S.C. sec. 371, and for a corrupt endeavor to interfere with the administration of the internal revenue laws, in violation of section 7212(a). In 2008 he was convicted of these crimes and sentenced to prison, where he remained until his release in 2014. See United States v. Crim, No. 06-CR-00658-1 (E.D. Pa. 2008), aff'd in part, 451 F. App'x 196 (3d Cir. 2011).

By letter dated June 16, 2010, the IRS notified petitioner that it proposed to assess penalties under section 6700(a) for the activities in which he had engaged. That section imposes a penalty on persons who knowingly make false or fraudulent statements with respect to the allowability of tax benefits in connection with an entity, plan, or arrangement. The penalty imposed is generally $1,000 "with respect to each activity described in paragraph (1)." Section 6700(a)(1) lists, as activities subject to penalty, organizing or assisting in the organization of an entity, investment plan, or arrangement, and participating (directly or indirectly) in the sale of any interest in such an entity, plan, or arrangement.

The IRS determined that petitioner, in promoting his tax shelter scheme to multiple clients, had engaged in numerous "activities" within the scope of section 6700(a)(1). Specifically, it concluded that petitioner had "directly or indirectly participated in the sale" of 24 trust packages during 1999, 25 trust packages during

**[\*4]** 2000, 16 trust packages during 2001, 146 trust packages during 2002, and 45 trust packages during 2003. It proposed a penalty of $1,000 per trust package, generating penalties of $24,000, $25,000, $16,000, $146,000, and $45,000, for 1999-2003, respectively.

The IRS mailed the June 16, 2010, letter to petitioner at the prison in which he was incarcerated. The letter was addressed to "John Michael Crim, Inmate #04554-063, CI Taft Correctional Institution, P.O. Box 7001, Taft, CA 93268." Petitioner received the letter and responded to it 12 days later, showing as his return address the address to which the IRS had sent its letter. He denied that he "ever promoted any kind of tax shelters or tax related schemes" and denied liability for the section 6700 penalties.

On July 26, 2010, the IRS assessed the penalties it had proposed.[2] On November 18, 2011, in an effort to collect the penalties, the IRS filed a notice of Federal tax lien (NFTL) with the county recorder in Bakersfield, California. On November 22, 2011, the IRS mailed petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing (lien notice). The IRS addressed this

---

[2]In 2015 the IRS also assessed an unpaid 2014 Federal income tax liability of $177. Petitioner does not challenge the levy as applied to that liability, and we do not discuss it further.

**[*5]** letter to petitioner at P.O. Box 7001, Taft, California 93268, the address at which it had previously communicated with him successfully.

The lien notice informed petitioner that he had "a right to a hearing * * * to appeal this collection action and to discuss [his] payment method options." The letter enclosed IRS Publication 1660, Collection Appeal Rights, and Form 12153, Request for a Collection Due Process or Equivalent Hearing. The letter instructed petitioner to submit his request for a CDP hearing by December 30, 2011. Petitioner did not respond to the lien notice and did not request a CDP hearing with respect to it.

After filing the NFTL the IRS paused further collection action due to petitioner's incarceration, placing his account temporarily into "currently not collectible" status. His account was reactivated after his 2014 release from prison. On March 8, 2017, the IRS sent him, at his then address in California, a Letter 1058, Notice of Intent to Levy and Your Right to a Hearing (levy notice), covering the section 6700 penalties. His representative, Attorney Joseph DiRuzzo, timely requested a CDP hearing on his behalf, representing that petitioner had since moved to the island of Malta. In the hearing request petitioner checked the box, "I Cannot Pay Balance," and expressed interest in an installment agreement or offer-in-compromise.

[*6]   A settlement officer (SO) from the IRS Appeals Office in Tampa, Florida, was assigned to petitioner's case.  The SO verified that the penalties had been properly assessed and that all requirements of law and administrative procedure had been satisfied.  He then initiated communications with Attorney DiRuzzo about the case.

At no point during the CDP proceeding did Attorney DiRuzzo dispute that petitioner had engaged in activities penalizable under section 6700.  Rather, his attorney advanced a number of legal arguments.  First, he sought confirmation that the penalties had received proper supervisory approval under section 6751(b)(1).  After some digging, the SO secured copies of Forms 8278, Assessment and Abatement of Miscellaneous Civil Penalties, establishing that supervisory approval for all five penalties was obtained on June 14, 2010, six weeks before the penalties were assessed.

Second, petitioner contended that the penalties had been assessed and/or collected after the relevant period of limitations had expired.  The SO replied that petitioner could not challenge his underlying liability for the penalties because he had a prior opportunity to do so--when the lien notice was issued to him in 2011-- but neglected to take advantage of that opportunity.  In response Attorney DiRuzzo asserted that "my client did not receive the * * * [lien notice] in November 2011

[*7] because my client was incarcerated." The apparent premise for this assertion was that the IRS was obligated to address the lien notice to petitioner at his place of incarceration but had supposedly mailed it instead to some other address. The SO subsequently confirmed that (1) the lien notice had indeed been addressed to petitioner at his place of incarceration, and (2) the address to which the notice had been mailed was the correct address for the Taft Correctional Institution.

Third, Attorney DiRuzzo demanded confirmation that "the appeal[s] officer that will be making the determination in this case has been appointed in a manner consistent with the Appointment[s] Clause" of the U.S. Constitution. The SO questioned how the Appointments Clause affects a CDP hearing and asked Attorney DiRuzzo "to explain this issue to me." Attorney DiRuzzo replied that an IRS official "cannot hear my client's CDP" unless that person was appointed "in a manner that is consistent with the Appointment[s] Clause."

The SO gave Attorney DiRuzzo a deadline of May 31, 2017, for submission of "any specific collection alternative that * * * [petitioner] wish[ed] to raise," accompanied by the necessary financial information. Petitioner submitted no such proposal. During a telephone call on June 20, 2017, Attorney DiRuzzo confirmed that petitioner declined to submit any financial information. Attorney DiRuzzo requested that the SO issue a notice of determination so that he could "address

[*8] several issues with Tax Court," including the period-of-limitations issue, the Appointments Clause issue, and an argument that collection of the penalties was barred by laches.

On July 25, 2017, the IRS issued petitioner a notice of determination sustaining the collection action. The SO concluded that "the [underlying] liability issue was not open for the penalty assessments" because petitioner had failed to request a CDP hearing when he received the 2011 lien notice. The SO verified that this prior notice had been "sent to P.O. Box 7001, Taft, CA 93268, which corresponds to the Taft Correctional Institution," noting that petitioner had received prior correspondence the IRS directed to him at this address. In any event, the SO rejected the argument that the penalties were barred by limitations. The 10-year period of limitations on collection, see sec. 6502, had not expired as of 2017, and petitioner did not identify any relevant period of limitations on assessment. Finally, the SO concluded that no collection alternative could be considered because petitioner refused to submit financial information.

Petitioner timely petitioned this Court on August 4, 2017. Three weeks later Attorney DiRuzzo filed a motion to disqualify all Tax Court Judges and to declare unconstitutional section 7443(f), which permits the President to remove a Judge of this Court "for inefficiency, neglect of duty, or malfeasance in office." We denied

[*9] that motion by order dated September 21, 2017. Nine days later Attorney Di-Ruzzo filed a motion to remand, contending that the SO who conducted the CDP hearing was an improperly appointed "Officer of the United States" and demanding that the case be sent back to the Appeals Office "for a hearing before an IRS employee appointed in a manner consistent with the Constitution." We denied that motion by order dated July 12, 2019.

On November 14, 2019, respondent filed a motion for summary judgment. Petitioner opposed that motion and filed a cross-motion for summary judgment. Further briefing ensued.

## Discussion

I.      Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific

**[*10]** facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d). Finding no material facts to be in genuine dispute, we conclude that this case may be adjudicated summarily.

## II.     Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity or amount of the taxpayer's underlying liability is properly at issue, we review the IRS' determination of that issue de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not before us, we review the IRS' decision for abuse of discretion only. Id. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

## III.    Underlying Liabilities

### A.     Prior Opportunity

Petitioner disputes his underlying liability for the section 6700 penalties. A taxpayer's underlying liability is properly at issue in a CDP case only "if the person did not receive any statutory notice of deficiency for such tax liability or did

[*11] not otherwise have an opportunity to dispute" it.  Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).  Section 6700 penalties are "assessable penalties" that the IRS is authorized to assess (as it did here) without initiating deficiency procedures.  See sec. 6703(b) (providing that deficiency procedures "shall not apply with respect to the assessment or collection of the penalties provided by section[] 6700"); Williams v. Commissioner, 131 T.C. 54, 58 n.4 (2008).  Petitioner therefore did not receive a notice of deficiency.

Petitioner did, however, have a prior opportunity to dispute the penalties when the IRS issued him the lien notice in November 2011.  That notice explicitly offered him the opportunity to dispute his liability for the penalties at a CDP hearing.  And it enclosed a Form 12153 for his use in requesting a hearing.  Because he failed to submit any such request, he forfeited his opportunity to challenge his underlying liability in a pre-payment forum, and he is not entitled to a do-over in this case.  See sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.; see also Baltic v. Commissioner, 129 T.C. 178, 183 (2007); Lewis v. Commissioner, 128 T.C. 48, 62 (2007); Daniel v. Commissioner, T.C. Memo. 2009-28, 97 T.C.M. (CCH) 1120, 1122.

In November 2011 petitioner was incarcerated at the Taft Correctional Institution in Taft, California.  The SO confirmed that the lien notice was sent to peti-

[*12] tioner by certified mail, properly addressed to him at that facility.  Cf. United States v. Williams, 130 F. App'x 301, 302 (11th Cir. 2005) (citing Dusenbery v. United States, 534 U.S. 161 (2002)) (holding that "mail addressed to a prisoner at the facility at which he actually is incarcerated is sufficient" to comply with due process).  As the SO noted, the IRS had directed prior correspondence to petitioner at that same address.  Petitioner received that earlier IRS letter and responded to it.

Petitioner's counsel denies that petitioner received the 2011 lien notice.  He agrees that petitioner was incarcerated at the Taft Correctional Institution and that the lien notice was mailed to its correct address.  He cites no evidence of irregularities in the prison's mail distribution system and no evidence that the lien notice was returned to the IRS as undeliverable.  But he points out that the lien notice, unlike the prior IRS letter that petitioner concededly received, included his prison inmate number.  From this petitioner's counsel seeks to draw the inference that the lien notice--an official document sent to petitioner by certified mail from another Government agency--simply disappeared into the prison and was never actually received by him.

We conclude that this line of argument is insufficient to create a genuine dispute of material fact.  The person with the most direct knowledge of whether petitioner received the 2011 lien notice is presumably petitioner.  His attorneys

**[\*13]** have filed mountains of paper in this case, but the one thing they have not submitted is an affidavit from petitioner himself averring, under penalties of perjury, that he did not receive the lien notice. Indeed, nowhere in the record is there any first-hand indication from petitioner himself that he did not receive that notice.

Although section 6330(c)(2)(B) contemplates actual receipt of a notice by the taxpayer, see Tatum v. Commissioner, T.C. Memo. 2003-115, the taxpayer may not avoid actual receipt by deliberately refusing delivery, see Sego, 114 T.C. at 610-611. "The Commissioner has generally prevailed in foreclosing challenges to the underlying liability under section 6330(c)(2)(B) where he establishes that a notice * * * was mailed to the taxpayer's last known address." Kamps v. Commissioner, T.C. Memo. 2011-287, 102 T.C.M. (CCH) 580, 582. "In the absence of clear evidence to the contrary, receipt of the notice * * * will be presumed upon proof of mailing." Ibid. (citing Sego, 114 T.C. at 611).

Petitioner's attorneys have submitted nothing but denials and speculation. These allegations are insufficient to overcome the presumption of official regularity. See Sego, 114 T.C. at 611. Nor do these allegations create a genuine dispute of material fact. See Rule 121(d) (providing that a party opposing sum-

**[\*14]** mary judgment must set forth "specific facts," including facts established "by affidavits or declarations").

### B.    Period of Limitations

Assuming arguendo that petitioner's underlying liability challenge is properly before us, his challenge fails.  His attorneys do not dispute that he engaged in conduct penalizable under section 6700(a).  Rather, they assert that the penalties were sought to be collected and/or were assessed after the period of limitations had expired.  His attorneys have advanced various theories at various points in this litigation, and we will address them in turn.[3]

### 1.    Limitations Period on Collection

During the CDP hearing Attorney DiRuzzo contended that the period of limitations on collection had expired.  That contention is ill founded.  Section 6502(a)(1) provides that a tax that has been properly assessed may be collected if the levy or other collection action is begun "within 10 years after the assessment."  The section 6700 penalties were assessed on July 26, 2010.  The levy notice that

_____

[3]Respondent does not dispute that a period-of-limitations challenge may place a taxpayer's underlying liability at issue.  See, e.g., Jordan v. Commissioner, 134 T.C. 1, 8 (2010) ("We have held that a challenge to the 10-year period of limitations on collection is a challenge to the underlying liability."), supplemented by T.C. Memo. 2011-243; Hoffman v. Commissioner, 119 T.C. 140, 145 (2002) ("Raising the issue of whether the limitations period [on assessment] has expired constitutes a challenge to the underlying tax liability.").

**[\*15]** commenced this case was timely issued on March 8, 2017, within 10 years of that date.

Petitioner alternatively contends that the IRS is barred from collecting the penalties by the doctrine of laches. It is well established that this doctrine cannot be applied against the Government in tax collection cases. See United States v. Summerlin, 310 U.S. 414, 416 (1940) (holding that the Government is not "subject to the defense of laches in enforcing its rights"); Hatchett v. United States, 330 F.3d 875, 887 (6th Cir. 2003) (holding that the Government is not "subject to its own laches in tax collection actions"); Dial v. Commissioner, 968 F.2d 898, 904 (9th Cir. 1992) (same), aff'g T.C. Memo. 1990-9. Section 6502(a) explicitly allows the Government 10 years from assessment to collect assessed taxes. As waivers of sovereign immunity, statutes of limitations are strictly construed in favor of the Government. See Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 287 (1983). Laches cannot be invoked to shorten the limitations period that Congress has ordained. See Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 678 (2014); United States v. Mack, 295 U.S. 480, 489 (1935).

**[*16]**   2.   Limitations Period on Assessment

The penalties in question were assessed for activities in which petitioner engaged during 1999-2003, and the penalties were not assessed until July 2010. Petitioner contends that the assessments were therefore untimely under the three-year limitations period set forth in section 6501(a). Courts have uniformly rejected this argument, holding that there is no period of limitations on assessment of penalties under section 6700 or section 6701, which imposes a similar penalty for "aiding and abetting understatement of tax liability."[4]

Section 6501(a) provides that a tax must generally be assessed "within 3 years after the return was filed" or (if the tax is payable by stamp) within three years after the tax was paid. Section 6700 penalties for promoting abusive tax shelters bear no relationship to the filing of a tax return (by the promoter or anyone else). Rather, they are imposed by reason of the promoter's having engaged in one or more "activities" specified in section 6700(a)(1). By its terms, therefore, section 6501(a) imposes no period of limitations on the assessment of these penalties.

---

[4]See, e.g., O'Brien v. Commissioner, T.C. Memo. 2012-326, 104 T.C.M. (CCH) 620, 625-626 (citing Mullikin v. United States, 952 F.2d 920, 929 (6th Cir. 1991) ("No statute of limitations is applicable to the assessment of [s]ection 6701 penalties[.]"), Sage v. United States, 908 F.2d 18, 24 (5th Cir. 1990) ("[E]very court that has considered the issue has held that no period of limitations applies to the assessment of [s]ection 6700 penalties."), and Emanuel v. United States, 705 F. Supp. 434, 436 (N.D. Ill. 1989) (same)).

**[*17]** This conclusion is consistent not only with the statute's text but also with its context. Section 6700 penalties are imposed where a promoter has made "false or fraudulent" statements regarding the availability of tax benefits. Sec. 6700(a)(2)(A). Permitting these penalties to be assessed at any time is coherent with section 6501(c)(1), which provides that, "[i]n the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed * * * at any time." See Mullikin v. United States, 952 F.2d 920, 928 (6th Cir. 1991); Sage v. United States, 908 F.2d 18, 25 (5th Cir. 1990).

Petitioner alternatively contends that assessment of the penalties was barred by 28 U.S.C. sec. 2462, which provides in relevant part:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture * * * shall not be entertained unless commenced within five years from the date when the claim first accrued * * *

As is evident from its text, as well as its placement in title 28 of the U.S. Code, section 2462 applies to "an action, suit or proceeding" that is commenced "for the enforcement" of a fine or penalty. This provision cannot operate as a period of limitations on the assessment of a tax. An assessment is not a judicial action or adversary proceeding, but a ministerial and unilateral act by an IRS employee. And an assessment is not an enforcement mechanism; it simply records the

**[*18]** taxpayer's liability for the tax, which must then be enforced by levy, lien, or judicial collection action.  For these reasons, courts have uniformly rejected the argument that this provision restricts assessment of "assessable penalties" under the Code, including penalties assessed under sections 6700 and 6701.[5]

Moreover, 28 U.S.C. sec. 2462 by its terms applies "[e]xcept as otherwise provided by Act of Congress."  In the case of actions to collect tax penalties, Congress has "otherwise provided"--namely in section 6502(a), which provides that an assessed tax "may be collected by levy or by a proceeding in court" within 10 years after the assessment.  See Lamb v. United States, 977 F.2d 1296, 1297 (8th Cir. 1992) (citing section 6502(a) as a limitations period "otherwise provided" by Congress); Mullikin, 952 F.2d at 929 (same).  In short, neither section 6501(a) nor 28 U.S.C. sec. 2462 imposes any period of limitations on assessment of the penalties in question here.

---

[5]See Capozzi v. United States, 980 F.2d 872, 874 (2d Cir. 1992) (holding that section 2462 does not apply to the assessment of section 6700 penalties because "an assessment is neither an action, a suit, nor a proceeding"); Mullikin, 952 F.2d at 928 (holding that "Congress did not intend that the statute of limitations contained in [s]ection 2462 apply to the assessment of penalties pursuant to [s]ection 6701"); see also 3M Co. (Minn. Mining & Mfg.) v. Browner, 17 F.3d 1453, 1459 n.11 (D.C. Cir. 1994) (holding that the "first ground of decision in Capozzi," viz., that an IRS penalty assessment is not an action, suit, or proceeding, is "consistent with our analysis").

**[*19]** IV.     Abuse of Discretion

In deciding whether the SO abused his discretion in sustaining the notice of intent to levy, we consider whether he:  (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues petitioner raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).  Our review of the record establishes that the SO properly discharged all of his responsibilities under section 6330(c).

Petitioner in his CDP hearing request checked the box "I Cannot Pay Balance" and expressed interest in an installment agreement or offer-in-compromise. But his representative never submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and he affirmatively stated that petitioner would not supply any financial information.  Nor did petitioner put a specific collection proposal on the table, despite the SO's request that he submit one.  For those reasons, the SO was unable to evaluate petitioner's ability to pay or make any determination as to his eligibility for a collection alternative.  See Gentile v. Commissioner, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75,

**[\*20]** 77, <u>aff'd</u>, 592 F. App'x 824 (11th Cir. 2014); sec. 301.6330-1(e)(1), Proced. & Admin. Regs.

In sum, the SO did not abuse his discretion in determining petitioner to be ineligible for collection relief.  Finding no abuse of discretion in this or any other respect, we will grant summary judgment for respondent and sustain the collection action.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.